USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-1116 UNITED STATES OF AMERICA, Appellee, v. OMAR MARTIN ZAPATA, a/k/a OMAR MARTIN ZAPATA-MEDINA, a/k/a OMAR ZAPATA MARTIN, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ _________________________ Before Breyer, Chief Judge, ___________ Selya and Boudin, Circuit Judges. ______________ _________________________ Lenore Glaser on brief for appellant. _____________ A. John Pappalardo, United States Attorney, and Jeanne M. ___________________ _________ Kempthorne, Assistant United States Attorney, on brief for __________ appellee. _________________________ July 19, 1993 _________________________ SELYA, Circuit Judge. In this criminal appeal, SELYA, Circuit Judge. ______________ defendant-appellant Omar Martin Zapata-Medina (Zapata), an alien, claims that the court below impermissibly "double counted" in calculating the guideline sentencing range (GSR) applicable to his case. Concluding that Zapata's sentence was lawfully constituted, we affirm. I I The facts relevant to this appeal are not disputed. The government deported Zapata in 1990, following his conviction on a state drug-trafficking charge for which he served 142 days in prison (the remainder of his term of immurement having been suspended). Under applicable federal law, Zapata's prior conviction is classified as an aggravated felony. See 8 U.S.C. ___ 1101(a)(43). The deportation did not stick: Zapata returned to the United States sub rosa in 1992. Once apprehended, he pled ___ ____ guilty to a charge that he had violated 8 U.S.C. 1326(a) & (b)(2).1 At sentencing, the district court calculated Zapata's offense level and criminal history category (CHC) in the manner directed by the federal sentencing guidelines.2 The court ____________________ 1These subsections stipulate in the aggregate that any "alien who . . . has been arrested and deported . . ., and thereafter . . . is . . . found in . . . the United States [without the express consent of the Attorney General, and] . . . whose deportation was subsequent to a conviction for commission of an aggravated felony, . . . shall be [punished as provided]." 2As a matter of general interest, we note that Zapata was sentenced on December 1, 1992; hence, the November, 1992 version of the guidelines applied. See United States v. Harotunian, 920 ___ _____________ __________ F.2d 1040, 1041-42 (1st Cir. 1990) (directing that, except where 2 started with a base offense level of eight, see U.S.S.G. ___ 2L1.2(a), increased the offense level to twenty-four, see ___ U.S.S.G. 2L1.2(b)(2) (directing a sixteen-level increase for a defendant who has entered the United States unlawfully following deportation "after a conviction for an aggravated felony"), and subtracted three levels for acceptance of responsibility, see ___ U.S.S.G. 3E1.1, thereby reaching an adjusted offense level of twenty-one. The district court's calculation of Zapata's CHC lies at the heart of this appeal. Under U.S.S.G. 4A1.1(b), two criminal history points are to be added "for each prior sentence of imprisonment" of sixty days or more. The term "prior sentence" means "any sentence previously imposed upon adjudication of guilt, whether by guilty plea [or otherwise], for conduct not part of the instant offense." U.S.S.G. 4A1.2(a)(1). The district court invoked this provision, adding two points to Zapata's criminal history score by reason of the prior narcotics conviction (notwithstanding that the prior conviction had already been used to ratchet up his offense level). The two criminal history points boosted appellant over the line into CHC II and upped the GSR to 41-51 months. After the district court sentenced appellant to forty- ____________________ necessary to avoid ex post facto problems, "a defendant is to be __ ____ _____ punished in accordance with the guidelines in effect at sentencing"). Although the district court signalled an intention to use the November, 1991 version of the guidelines, this appears to have been a slip of the tongue. Because the district court's calculations faithfully track the November, 1992 version, we disregard the lapsus linguae. ______ _______ 3 one months in prison, this appeal arose. In it, Zapata assigns error solely to the double counting of his original narcotics conviction. II II In the sentencing context, double counting is a phenomenon that is less sinister than the name implies. The practice is often perfectly proper. This case illustrates the point: the double counting in which the district court engaged did not stray into forbidden territory. Rather, the court's methodology carefully tracked the Sentencing Commission's interpretive comment, which states specifically that an offense level increase for a prior felony conviction under section 2L1.2(b) "applies in addition to any criminal history points ________________ added for such conviction in Chapter Four, Part A (Criminal History)." U.S.S.G. 2L1.2, comment. (n.5) (emphasis supplied). As a general rule, courts should strive to apply the guidelines as written, giving full force and effect to the Sentencing Commission's interpretive commentary and application notes. See ___ Stinson v. United States, 113 S. Ct. 1913, 1915 (1993); United _______ _____________ ______ States v. Jones, ___ F.2d ___, ___ (1st Cir. 1993) [No. 93-1189, ______ _____ slip op. at 6]; see also United States v. Williams, 954 F.2d 204, ___ ____ _____________ ________ 206 (4th Cir. 1992) (approving double counting on the basis that the sentencing guidelines must be "applied as written"). Although there are exceptions to the general rule, see, e.g., ___ ____ Stinson, 113 S. Ct. at 1915 (explaining that commentary may be _______ disregarded if "it violates the Constitution or a federal 4 statute, or is inconsistent with, or a plainly erroneous reading of, [a] guideline"); United States v. Fiore, 983 F.2d 1, 2 (1st _____________ _____ Cir. 1992) (stating that courts "should defer to the Commission's suggested interpretation of a guideline provision unless the Commission's position is arbitrary, unreasonable, inconsistent with the guideline's text, or contrary to law"), cert. denied, _____ ______ 113 S. Ct. 1830 (1993), no such exception applies in this instance. To the contrary, note 5 strikes us as fully consonant with constitutional understandings, relevant statutory law, and the text of the applicable guideline provisions. Furthermore, the case law offers a ringing endorsement for the district court's use of double counting in the circumstances at hand. Indeed, in United States v. Adeleke, 968 _____________ _______ F.2d 1159 (11th Cir. 1992), the Eleventh Circuit flatly rejected a challenge virtually identical to that mounted by Zapata.3 The Adeleke court determined that the Sentencing Commission intended _______ a prior felony conviction to be used in calculating both the offense level and the CHC in a Title 8 case. See id. at 1161. ___ ___ The court found support for this conclusion not only in the Commission's interpretive commentary but also in the sentencing ____________________ 3Adeleke involved an alien found in the United States after _______ he had been deported following an earlier conviction for a garden-variety "felony." See 8 U.S.C. 1326(b)(1). In ___ contrast, the case before us involves 8 U.S.C. 1326(b)(2), which pertains to an alien convicted of an "aggravated felony" prior to deportation. Because the only material difference concerns the seriousness of the prior felony conviction, we think that "(b)(1)" cases, like Adeleke, are relevant authority when a _______ court ponders the permissibility of double counting in a "(b)(2)" case. 5 calculus itself. In this respect, the court viewed the use of the same conviction for "conceptually separate notions" about sentencing to be permissible, explaining that the criminal history adjustment is "designed to punish likely recidivists more severely, while the [offense level] enhancement . . . is designed to deter aliens who have been convicted of a felony from re- entering the United States." Id. (citation omitted). ___ In United States v. Campbell, 967 F.2d 20, 22-23 (2d _____________ ________ Cir. 1992), a case involving an alien convicted under the statute at issue here but sentenced pursuant to an earlier, somewhat different version of the guidelines, the Second Circuit employed a similar rationale to sustain the two-fold use of a prior conviction. The district court double counted a previous aggravated felony conviction in calculating the offense level and CHC, respectively, for an alien who, like Zapata, unlawfully reentered the United States. Id. at 23. The court of appeals ___ affirmed, noting that, although the prior conviction had been used twice in constructing the defendant's sentence, the two usages measured different things: on one occasion, the offense level, which represents the Sentencing Commission's judgment as to the wrongfulness of the unlawful entry under the attendant circumstances; and on the second occasion, the CHC, which estimates the likelihood of recidivism with respect to the particular alien who achieves the illegal reentry. Id. at 24-25. ___ Adeleke and Campbell mirror the analytic approach _______ ________ adopted by this court in United States v. Sanders, 982 F.2d 4 _____________ _______ 6 (1st Cir. 1992), cert. denied, 61 U.S.L.W. 3818 (1993). There, _____ ______ we found double counting to be permissible because the guideline in question plainly directed the court to use a single factor a conviction for carrying a firearm in the course of a drug crime in two different ways: first, to calculate the offense level of an armed career criminal, and second, to calculate the criminal's CHC. See id. at 6. ___ ___ We see no reason to retreat from these principles or to skirt their application in the instant case. Congress has delegated to the Sentencing Commission the twin tasks of determining (1) which factors should be considered in punishing and deterring criminals, and (2) the methodology by which punishment-related and deterrence-related factors should be taken into account in constructing a particular sentence. See United ___ ______ States v. La Guardia, 902 F.2d 1010, 1015 (1st Cir. 1990). In a ______ __________ carefully calibrated scheme aimed at producing sentencing ranges that will differ depending upon the existence and nature of a prior felony conviction, section 2L1.2 expresses two things: (1) the Commission's determination that the incidence and attributes of a prior felony conviction should be weighed by courts in sentencing a special class of aliens who have unlawfully reentered the United States, and (2) the Commission's related decision that the methodology best suited to achieving both punishment and deterrence is to consider the relevant aspects of such a conviction in calculating not only the offense level but 7 also the CHC.4 We have said enough on this score. Since the sentencing scheme that the Commission has devised for the offense of conviction is plausible as a whole and not inconsistent with statutory law or constitutional precepts, we cannot substitute our judgment for that of the Commission. This means, of course, that we can second-guess neither the Commission's determination that the offense of unlawful reentry subsequent to perpetrating an aggravated felony is sufficiently more serious than the commission of the same offense while toting less weighty baggage and, thus, warrants greater punishment, nor its allied determination that an alien who, having been deported following a conviction for an aggravated felony, and having exhibited a willingness to flout our laws again by reentering the country without permission, may be more likely to commit serious crimes than an alien who unlawfully reenters this country with no criminal record or with a less sullied record, and, thus, deserves a sentence possessing greater deterrent impact. Cf., ___ e.g., id. at 1015 (explaining that, since the Commission is free ____ ___ to determine the extent to which substantial assistance by a defendant should warrant a downward departure and to fashion an ____________________ 4U.S.S.G. 2L1.2(a) establishes a base offense level of 8 for aliens unlawfully entering the United States. The guideline provides a four-level increase for aliens previously deported after conviction for a non-immigration-related, non-aggravated felony, id. at 2L1.2(b)(1), and a sixteen-level increase if the ___ previous conviction was for an aggravated felony. See id. at ___ ___ 2L1.2(b)(2). Other aspects of the sentencing scheme, such as how it treats misdemeanors, see id., comment. (n.1), are not germane ___ ___ for present purposes and, therefore, need not be discussed. 8 implementing methodology, it is not for the courts to question the wisdom of rational choices made by the Commission in these respects). We hold, therefore, that to the extent the same factor reflects both the seriousness of an offense and the likelihood of a particular defendant's recidivism, it may be considered twice in sentencing for the separate purposes of punishment and deterrence so long as the Commission, expressly or by fair implication, so directs. Cf. United States v. Newman, 982 F.2d ___ _____________ ______ 665, 672-75 (1st Cir. 1992) (holding double counting to be permissible in a situation where it was expressly authorized by the applicable guideline and helped to effectuate the Sentencing Commission's "carefully calibrated offense level adjustment scheme"), petition for cert. filed (U.S. Apr. 22, 1993). Because ________________________ the ruling below falls squarely within this ambit, we reject appellant's claim of error. III III Appellant has another string to his bow. Citing United ______ States v. Campos-Martinez, 976 F.2d 589 (9th Cir. 1992), he ______ _______________ asseverates that, because his prior felony conviction is an element of the crime to which he pled guilty, double counting conflicts with what he terms a "clear policy of the Sentencing Commission to avoid double counting when the specific behavior is an element of the crime for which the defendant will be sentenced." Appellant's Brief at 6. Appellant bases this argument on the combined force of three items: (1) the language 9 of U.S.S.G. 4A1.2(a)(1) (defining a "prior sentence" for purposes of computing a defendant's criminal history score as any sentence "for conduct not part of the instant offense"); (2) an introductory comment to Chapter 3, Part D, of the sentencing guidelines (discussing the need for grouping rules "to prevent multiple punishment for substantially identical offense conduct"); and (3) a multifaceted analogy to several specific instances in which the Commission, having employed an element of the offense in fixing the base offense level, thereafter chose to eschew any double counting. See, e.g., U.S.S.G. 3A1.1, ___ ____ comment. (n.2) (discussing vulnerability of victim), 3A1.3, comment. (n.2) (discussing restraint of victim), 3B1.3 (discussing abuse of special trust), 3C1.1, comment. (n.6) (discussing obstruction of justice); see also United States v. ___ ____ ______________ Plaza-Garcia, 914 F.2d 345 (1st Cir. 1990) (applying 3A1.1, ____________ comment. (n.2)). Placing three legs under the asseverational stool does not render it capable of bearing the load that appellant rests on it. The first two arguments can be considered in tandem. As the government points out, both the definition of "prior sentence" and the caveat to the grouping rules focus on the problem of punishing a defendant twice for the same conduct. By like token, ____________________ the concern expressed by the Sentencing Commission in the introductory comment to Chapter 3, Part D applies to multiple- count indictments a situation where, prototypically, a defendant's guilt on several counts may flow from the same 10 underlying conduct. The case at bar presents a materially different set of circumstances. Although Zapata's prior drug- trafficking conviction may well be an element of the offense stated by 8 U.S.C. 1326(b)(2),5 the conduct which resulted in that conviction is clearly separate and distinct from the conduct at issue here. In other words, section 1326(b)(2) does not focus on appellant's earlier behavior, but on appellant's status as a ________ ______ previously convicted felon. This distinction completely undermines appellant's reliance both on U.S.S.G. 4A2.1(a)(1) and on the introductory comment to the grouping rules. Cf. ___ United States v. Alessandroni, 982 F.2d 419, 421, 422 (10th Cir. ______________ ____________ 1992) (upholding, against a similar challenge premised on 4A1.2(a)(1), the district court's consideration of a prior burglary conviction in calculating both the base offense level and the CHC applicable to a pending felon-in-possession count). The third leg of the stool is no more sturdy. The instances appellant cites as examples of the Sentencing Commission's policy against double counting simply do not support the suggested analogy. Those instances, like our decision in Plaza-Garcia, 914 F.2d at 347, do no more than illustrate that a ____________ given factor is not to be considered twice in calculating a defendant's offense level. See, e.g., Jones, ___ F.2d at ___ ___ ____ _____ ____________________ 5At least one district court has concluded that 8 U.S.C. 1326(a) and (b)(2) describe separate and distinct offenses so that the government "must allege, as an element of a violation of 1326(b)(2), the existence of a defendant's prior aggravated felony conviction." United States v. Vieira-Candelario, 811 F. _____________ _________________ Supp. 762, 768 (D.R.I. 1993). We take no view of this issue. 11 [slip op. at 5-6] (distinguishing Plaza-Garcia on this basis). ____________ For purposes of this case, we accept the premise that a single factor cannot be double counted in setting a defendant's offense level. But, such instances are not particularly instructive in examining the different question of whether a single factor (here, a prior conviction) may be considered in connection with both the calculation of a defendant's offense level and the calculation of his CHC. As we previously indicated, see supra ___ _____ Part II, we believe that where the guidelines so provide, either expressly or by fair implication, a single factor may serve double duty in that fashion. See Newman, 982 F.2d at 673 ___ ______ (holding that the Commission's express prohibition of double counting in certain instances indicates its intent to permit double counting in other instances); United States v. Blakney, _____________ _______ 941 F.2d 114, 117 (2d Cir. 1991) (allowing consideration of defendant's prior conviction in connection with both offense level and CHC calculations where the guidelines did not provide to the contrary and the general purposes underlying each usage differed). IV IV We need go no further. We conclude, without serious question, that double counting of the type employed here using a single factor to influence both the defendant's offense level and CHC is permissible. The double counting done in this case is, moreover, faithful to the tenor and purport of the guidelines. It follows that the lower court sentenced appellant 12 in a lawful manner. The judgment below is, therefore, summarily affirmed. See 1st Cir. Loc. R. 27.1. ___ Affirmed. Affirmed. ________ 13