UNITED STATES of America,
Plaintiff–Appellee,

v.

Filemon ARZATE–NUNEZ,
Defendant–Appellant.

No. 93–30129.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 1, 1994.

Decided Feb. 28, 1994.

R. John Sloan, Jr., Omak, Washington, for the defendant-appellant.

Earl A. Hicks, Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellee.

Before: GOODWIN, SCHROEDER and NORRIS, Circuit Judges.

GOODWIN, Circuit Judge:

Filemon Arzate–Nunez appeals his guilty plea conviction of being an alien in the United States after deportation and conviction of an aggravated felony. 8 U.S.C. § 1326(b)(2). He argues that the district court erred in denying his motion to dismiss the indictment and in accepting his conditional guilty plea. We affirm.

## I. FACTS & PROCEDURAL BACKGROUND

Arzate–Nunez is a citizen of Mexico who has spent significant time in the United States. In 1985, he was convicted in California state court of the sale or transportation of a narcotic, a felony under California Health & Safety Code § 11352. He served less than 90 days in jail. In January 1992, he was again arrested by officers investigating a drug conspiracy. The federal District Court of Washington, Eastern Division dismissed the charges arising out of this incident without prejudice. However, on April 4, 1992, the INS deported Arzate–Nunez based on his immigration status. Before his deportation, the INS sent Arzate–Nunez a warning letter stating that "any deported person who within five years returns without permission is guilty of a felony ... [and] may be punished by imprisonment of not more than two years and/or a fine of not more than $1,000.00."

In early December 1992, Arzate–Nunez reentered the United States. According to his counsel, Arzate–Nunez showed his passport to a United States Border Patrol agent on duty at the Tijuana, Mexican Border Patrol Post. After glancing at the passport, which was apparently valid from December 30, 1987 through December 29, 1992, the border patrol agent waived Arzate–Nunez through the checkpoint.

On December 4, 1992, federal agents investigating a Washington state drug conspiracy obtained a warrant to search a certain yellow Thunderbird car. Several of the investigating agents had also been involved in the investigation that led to Arzate–Nunez's January 1992 arrest and deportation. On December 6, these agents recognized Arzate–Nunez as a passenger in the yellow Thunderbird. Since they knew Arzate–Nunez had been deported less than eight months previously, they advised other agents that Arzate–Nunez was in the country illegally.

On December 7, 1992, agents watching the yellow Thunderbird again saw Arzate–Nunez in the car. When the vehicle headed south out of Okanogan County, they stopped the car and arrested Arzate–Nunez for being an alien in the United States after deportation.

Arzate–Nunez was subsequently indicted under 8 U.S.C. § 1326(b)(2), under which an alien who reenters the country without permission after being deported "subsequent to a conviction for commission of an aggravated felony" may be sentenced to 15 years imprisonment.[1] The government alleged that Arzate–Nunez's 1985 state drug conviction was an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43).

Arzate–Nunez timely moved to dismiss the indictment based on the ex post facto clause and the language of 8 U.S.C. § 1101(a)(43). He also argued that his arrest may have violated the Fourth Amendment and moved to discover the affidavit filed in support of the search warrant, which was filed under seal. The government opposed this discovery motion, contending that disclosing the affidavit would compromise ongoing drug investigations and endanger police informants

---

1. We have previously held that this section applies whether or not the deportation occurred in connection with the felony conviction. *United States v. Brito–Acosta,* 963 F.2d 1284 (9th Cir. 1992); *see also* U.S.S.G. § 2L1.2, Application Note 6.

and arguing that the legality of the search warrant was irrelevant to Arzate–Nunez's case. According to the government, the agents had an independent legal basis to stop the yellow Thunderbird because they recognized Arzate–Nunez as a person who had been deported.

At a March 5 pretrial conference, federal agents testified that they had recognized Arzate–Nunez before stopping the car. In addition, Arzate–Nunez produced the 1992 INS warning letter, alleging that the INS's inaccurate notice about the possible penalties for reentry violated his due process rights. The district court rejected Arzate–Nunez's ex post facto, statutory interpretation and Fourth Amendment claims orally and rejected the due process argument in a written order four days later.

Thereafter, Arzate–Nunez entered a conditional guilty plea agreement pursuant to Fed. R.Crim.P. 11(a)(2), reserving his right to appeal "the denial of his motion to dismiss filed February 26, 1992." At the plea taking, Arzate–Nunez's lawyer argued for the first time that Arzate–Nunez could not be guilty of entering the country without permission because the border patrol agent waived him across the Tijuana checkpoint, thereby consenting to his reentry. After determining that counsel had warned Arzate–Nunez that he might waive this defense if he pled guilty, the district court accepted Arzate–Nunez's guilty plea. The court then sentenced Arzate–Nunez to forty-one months of incarceration and two years of supervised release, as recommended in the written plea agreement. Arzate–Nunez appealed.

## II. EX POST FACTO CLAIM

Arzate–Nunez argues that his conviction violates the ex post facto clause because, at the time of his 1985 offense, his crime was not defined as an aggravated felony. The state statute under which he was convicted, California Health & Safety Code § 11352, defined his offense as a regular, rather than an aggravated, felony. Federal law did not define his offense as an aggravated felony until 1988, and the Sentencing Guidelines which provide for enhanced penalties for reentry following an aggravated felony were not effective until November 1991. *See* 8 U.S.C. § 1101(a)(43) (defining "illicit trafficking in any controlled substance" as an aggravated felony); U.S.S.G. § 2L1.2 (providing for a sixteen-point upward adjustment in the base offense level of defendants who were deported after being convicted of an aggravated felony).

■ We review an alleged ex post facto violation de novo. *United States v. Baker,* 10 F.3d 1374, 1394 (9th Cir.1993), *amended* (1993) (citing *United States v. Kohl,* 972 F.2d 294, 297 (9th Cir.1992)).

■ The ex post facto clause bars any law which "imposes a punishment for an act which was not punishable at the time [the act] was committed, or any law which imposes punishment greater than the punishment prescribed when the act was committed." *United States v. Crozier,* 777 F.2d 1376, 1383 (9th Cir.1985). Thus, a law which aggravates a crime or makes it greater than it was when it was committed violates the ex post facto clause. *Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). In order to prove an ex post facto violation, a defendant must show (1) that the law at issue disadvantages him and (2) that the law is retrospective, in that it applies to events occurring before its enactment. *United States v. Schram,* 9 F.3d 741, 742 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993) (citing *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)).

■ Arzate–Nunez has shown that the federal laws at issue in this case disadvantage him. In 1988, federal law redefined Arzate–Nunez's 1985 felony as an *aggravated* felony and increased the penalty for reentering the country from a maximum of five years to a maximum of fifteen years.[2] 8

---

**2.** It is of no consequence that Arzate–Nunez's actual sentence was less than five years, as the ex post facto inquiry focuses on a defendant's eligibility to receive a certain sentence, not his actual sentence. *United States v. Paskow,* 11 F.3d 873, 877 (9th Cir.1993). Had Arzate–Nunez not been subject to 8 U.S.C. § 1326(b)(2), he likely would

U.S.C. §§ 1101(a)(43), 1326(b)(2). In addition, the 1991 amendments to the Sentencing Guidelines impose a sixteen-point increase in Arzate–Nunez's base offense level.[3] U.S.S.G. § 2L1.2.

The more difficult question is whether these laws were applied retrospectively. The "key ex post facto inquiry is the actual state of the law at the time the defendant perpetrated the offense." *Watson v. Estelle*, 886 F.2d 1093, 1096 (9th Cir.1989). Thus, whether §§ 1326(b)(2) and 1101(a)(43) were applied retrospectively to Arzate–Nunez depends on whether "the offense" for ex post facto purposes is Arzate–Nunez's December, 1992 illegal entry into the country or the conduct which led to his 1985 state drug conviction. Is the enhanced sentence a punishment for Arzate–Nunez's reentry or for the conduct which led to his 1985 conviction?

Although this precise issue appears to be a question of first impression, most case law suggests that Arzate–Nunez's offense for ex post facto purposes is his 1992 reentry. For purposes of analyzing repeat offender statutes and statutes increasing penalties for future crimes based on past crimes, the relevant "offense" is the current crime, not the predicate crime. *United States v. Carson*, 988 F.2d 80, 81 (9th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 142, 126 L.Ed.2d 105 (1993) (provisions of the Sentencing Guidelines which increase the penalties for past crimes may be applied to defendants whose past crimes were committed before the Guidelines at issue); *United States v. Ahumada–Avalos*, 875 F.2d 681, 683 (9th Cir.), *cert. denied*, 493 U.S. 837, 110 S.Ct. 118, 107 L.Ed.2d 79 (1989) (no ex post facto violation where sentence was enhanced because of a prior drug conviction which

occurred before the enhancement statute was enacted).

Arzate–Nunez attempts to distinguish these cases by arguing that, under 8 U.S.C. § 1326(b)(2), commission of an aggravated felony is an element of the offense. *See, e.g., United States v. Vieira–Candelario*, 811 F.Supp. 762, 768 (D.R.I.1993). However, we have also held that the relevant offense for laws prohibiting ex-felons from carrying firearms is the offense of carrying a firearm, not the predicate felony. *United States v. Huss*, 7 F.3d 1444, 1447 (9th Cir.1993) (firearm prohibition may be applied to defendant whose felony was committed before state law prohibited persons guilty of that crime from carrying such firearms).[4] In *Huss*, we found that the firearm law was not an additional punishment for the defendant's previous felony but a bona fide attempt to regulate future conduct. *Id.* We said that such laws, even when they rely on past criminal convictions, do not run afoul of the ex post facto clause as long as "the past conduct can reasonably be said to indicate unfitness to engage in the future activity." *Id.* at 1448. Assuming § 1326(b)(2) meets this test, Arzate–Nunez's ex post facto claim must fail.

Arzate–Nunez's best argument to the contrary may be *United States v. Paskow*, 11 F.3d 873 (9th Cir.1993). In *Paskow*, we addressed the ex post facto implications of 18 U.S.C. § 3583(g), a 1988 amendment to the supervised release statute, which imposes a mandatory prison term of one-third the supervised release term on any defendant who violates his supervised release by testing positive for controlled substances. Because a term of supervised release is "simply part of the whole matrix of punishment which arises out of a defendant's original crimes," we held

---

have negotiated a more advantageous plea bargain.

**3.** If Arzate–Nunez's 1985 conviction were only a felony, and not an aggravated felony, he would have received only a four-point increase. The applicable sentence range would have been 21–27 months, absent any reduction for acceptance of responsibility, or 12–18 months, taking into account the three-point reduction for acceptance of responsibility which Arzate–Nunez in fact received.

**4.** *Accord Roehl v. United States*, 977 F.2d 375, 377–378 (7th Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993); *Cases v. United States*, 131 F.2d 916; 921 (1st Cir.1942), *cert. denied*, 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718 (1943). *But see United States v. Davis*, 936 F.2d 352, 356 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992) (holding that a law prohibiting ex-felons from carrying pistols for ten years after their release from prison did violate the ex post facto clause).

that the "offense" for ex post facto purposes was the defendant's original crime, not the conduct that violated the supervised release agreement. *Id.* at 883 (citations and internal quotations omitted). Thus, like a statute that decreased a defendant's eligibility for parole, § 3583(g) could not be applied to defendants whose predicate offenses occurred before its enactment. *Id.; see also Morales v. California Dept. of Corrections,* 16 F.3d 1001, 1004 (9th Cir.1994).

However, the statute at issue in the instant case has no such integral relationship with the defendant's predicate offense. Arzate–Nunez, unlike the defendant in *Paskow,* is being punished for a new offense, reentering the country. Before the courts can constitutionally punish him for this offense, he has the right to a jury trial, the right to insist that the government prove the elements of the offense beyond a reasonable doubt, and all of the attendant procedural protections afforded a criminal defendant who must be presumed innocent until proven guilty. A defendant accused of violating his supervised release agreement, in contrast, receives less procedural protections and may be sentenced upon a lesser showing of proof. *See, e.g., United States v. Stephenson,* 928 F.2d 728 (6th Cir.1991) (discussing a defendant's due process rights under 18 U.S.C. § 3583). Because of his previous crime, he is not only subject to a greater penalty, but may be subject to a penalty in circumstances for which another person may not be so punished. *Id.* Thus, as we found in *Paskow,* his punishment is a consequence of his original crime.

■ Arzate–Nunez's situation is more analogous to that of a defendant sentenced under a repeat offender statute or a person convicted of being a felon in possession of a firearm than to a defendant re-imprisoned for failure to adhere to his supervised release agreement. His reentry is a new offense for due process purposes, and also for ex post facto purposes. Since Arzate–Nunez reen-

tered the country after both 8 U.S.C. § 1101(a)(43) and U.S.S.G. § 2L1.2 were in effect, the district court correctly rejected his ex post facto claims.

## III. PROBABLE CAUSE TO ARREST

Arzate–Nunez also argues that the district court erred in denying his motion to discover the affidavit filed in support of the search warrant.[5] We disagree.

■ Probable cause to arrest exists when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the suspect is committing or has committed a crime. *United States v. Pinion,* 800 F.2d 976, 979 (9th Cir.1986), *cert. denied,* 480 U.S. 936, 107 S.Ct. 1580, 94 L.Ed.2d 770 (1987). Once an officer has probable cause to believe a suspect is committing a crime, he may stop a car and arrest the suspect without a warrant. *Id.; United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *United States v. Dunn,* 946 F.2d 615, 618–19 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991). We review the district court's probable cause determination de novo, accepting the district court's factual findings unless clearly erroneous. *United States v. Puerta,* 982 F.2d 1297, 1300 (9th Cir.1992).

■ Here, Agents Bauman and Destito testified that they recognized Arzate–Nunez from their previous contact with him, knew he was deported eight or nine months earlier and shared this information with other agents. The district court did not clearly err in believing this testimony, and these facts established probable cause to believe Arzate–Nunez was a person who had reentered the country after being deported. They thus provided agents with an independent basis to

5. Even if Arzate–Nunez's arrest was illegal, the error might be harmless as no evidence relevant to Arzate–Nunez's conviction was seized during the stop and an illegal arrest, without more, does not bar a subsequent prosecution. *INS v. Lopez–*

*Mendoza,* 468 U.S. 1032, 1039, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984); *United States v. Crews,* 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980); *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

stop the yellow Thunderbird, irrespective of the warrant.[6]

## IV. DEFINITION OF AGGRAVATED FELONY (8 U.S.C. § 1101(a)(43))

Arzate–Nunez also argues that his 1985 conviction was not an aggravated felony within the meaning of 8 U.S.C. §§ 1101(a)(43) & 1326(b)(2) because he served less than 90 days for the offense. He contends that the plain language of § 1101(a)(43) can be read to define an aggravated felony as "any illicit trafficking in any controlled substance ... for which the term of imprisonment imposed ... is at least five years."

■■■ We review a district court's interpretation of a statute de novo. *Mills v. Taylor*, 967 F.2d 1397, 1399 (9th Cir.1992); *United States v. Gilbert*, 813 F.2d 1523, 1526 (9th Cir.1987), *cert. denied*, 484 U.S. 860, 108 S.Ct. 173, 98 L.Ed.2d 127 (1987). Under the rule of lenity, where the language of a statute is open to more than one interpretation, we must choose the interpretation least likely to impose penalties unintended by Congress. *United States v. Dahms*, 938 F.2d 131, 135 (9th Cir.1991). Thus, while we cannot ignore the plain meaning of a statute, we must construe an ambiguous statute in favor of a criminal defendant. *Gilbert*, 813 F.2d at 1526.

Section 1101(a)(43) states that an "aggravated felony" is

> murder, *any illicit trafficking in any controlled substance* (as defined in section 802 of Title 21), including any drug trafficking

crime as defined in section 924(c)(2) of Title 18, or any illicit trafficking in any firearms or destructive devises as defined in section 921 of such title, any offense described in section 1956 of Title 18 (relating to laundering of monetary instruments), or any crime of violence (as defined in section 16 of Title 18, not including a purely political offense) *for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least five years,* or any attempt or conspiracy to commit such act. (emphasis added).

On its face, this language may be ambiguous. The requirement of a five-year term of imprisonment might apply only to the immediately preceding offense (violent crimes) or it could apply to all of the offenses in the list, including drug crimes. Case law has not resolved this ambiguity.[7]

■■■ However, the comment to U.S.S.G. § 2L1.2, which defines "aggravated felony" using nearly identical language as § 1101(a)(43), separates the list of crimes with semicolons rather than commas, thus unambiguously limiting the five-year term of imprisonment requirement to violent felonies. Under the comment, an aggravated felony is:

> murder; *any illicit trafficking in any controlled substance* (as defined in 21 U.S.C. § 802), including any drug trafficking crime as defined in 18 U.S.C. § 924(c)(2); any illicit trafficking in any firearms or destructive devises as defined in 18 U.S.C. § 921; any offense described in 18 U.S.C. § 1956 (relating to laundering of monetary

---

**6.** Arzate–Nunez's reliance on *United States v. Taheri*, 648 F.2d 598 (9th Cir.1981) is misplaced. In that case, an agent illegally opened a package and found heroin. The agents then had a dog sniff the package, and obtained a warrant based on the dog's "alerting." We held that the heroin was not free from the taint of the initial illegal search because "the subsequent use of the dog and the securing of the warrant amounted to no more than a post-hoc justification for using information that had been illegally obtained." *Id.* at 600. No similar problem exists in the present case. Agents did not learn of Arzate–Nunez's entry through any illegal searches or seizures; they recognized him during their surveillance based on legally obtained evidence. Even if the warrant was invalid, they did not need the warrant to keep the Thunderbird under surveillance, and thus, any illegality related to the warrant

would not taint Arzate–Nunez's subsequent arrest or conviction.

**7.** However, some cases discussing § 1101(a)(43) in the context of drug trafficking have assumed without discussion that the statute covers drug offenses for which the defendant served less than five years. *See, e.g., United States v. Zapata*, 1 F.3d 46, 47 (1st Cir.1993) (assuming without discussion that a state drug conviction for which the defendant served 142 days was an aggravated felony within the meaning of §§ 1326(b)(2) and 1101(a)(43)); *see also Garcia v. INS*, 7 F.3d 1320, 1322 (7th Cir.1993) (making the same assumption in the context of an immigration proceeding); *Urbina–Mauricio v. INS*, 989 F.2d 1085, 1087 (9th Cir.1993) (same).

instruments); *any crime of violence* (as defined in 18 U.S.C. § 16, not including a purely political offense) *for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least five years;* or any attempt or conspiracy to commit such act. (emphasis added).

Since these guidelines were in effect at the time Arzate–Nunez entered the country illegally, the penalties for reentering the country following a drug offense such as Arzate–Nunez's were not ambiguous.

## V. DUE PROCESS CLAIM BASED ON FAILURE TO WARN

Arzate–Nunez also argues that his conviction violates his due process rights because the INS's 1992 warning letter incorrectly informed him that the penalty for reentering the country could be at most two years and a fine. The government contends (A) that Arzate–Nunez did not preserve this claim for appeal and (B) that no due process violation occurred.

### A. *Waiver by guilty plea*

 A defendant who enters a conditional guilty plea pursuant to Fed.R.Crim.P. 11(a)(2) must state in writing any issues he wishes to reserve for appeal and may lose the right to appeal issues not so expressly reserved. *United States v. Echegoyen,* 799 F.2d 1271, 1276 (9th Cir.1986); *United States v. Carrasco,* 786 F.2d 1452, 1454 (9th Cir. 1986), *United States v. Alexander,* 761 F.2d 1294 (9th Cir.1985). In his written plea agreement, Arzate–Nunez expressly reserved the right to appeal "the denial of his motion to dismiss filed February 26, 1991." The government argues that this language does not preserve Arzate–Nunez's right to appeal his due process claim. We disagree.

 Arzate–Nunez's due process claim was part of his motion to dismiss. Although Arzate–Nunez did not raise the due process issue in his written motion to dismiss, counsel raised it at the pretrial hearing at which the other issues contained in the motion to dismiss were argued. Before Arzate–Nunez pled guilty, the United States Attorney stat-

ed in open court that, under the plea agreement, Arzate–Nunez reserved his right to appeal "all of those issues which he had raised [in] his motion to dismiss ... and the Court's order denying that motion." The district court order denying the motion to dismiss specifically discusses the due process claim.

Thus, Arzate–Nunez did not waive his due process claim by pleading guilty.

### B. *Due process claim*

 However, the claim itself is without merit. As the government emphasizes, ignorance of the law or mistake as to the law's requirements are generally no defense to criminal conduct. *United States v. Duggan,* 743 F.2d 59, 83 (2d Cir.1984). Arzate–Nunez was ignorant only of the precise penalties for violating the law, not of the fact that reentering the United States would violate United States law. The INS's warning letter correctly informed Arzate–Nunez that he could be subject to criminal penalties for reentering the country; it misinformed him only as to the magnitude of these penalties.

Arzate–Nunez cites no authority indicating that the government has an obligation to warn deported persons or citizens generally of the precise penalties which might attach if they reenter the country or commit a crime. The INS did not undertake or promise to inform Arzate–Nunez of all the possible future penalties to which he might be subject. Thus, although the INS might well improve the accuracy of its warning letter, no due process violation has occurred.

## VI. EXPRESS CONSENT OF ATTORNEY GENERAL

 Finally, Arzate–Nunez argues that the district court erred in accepting his guilty plea. He contends that he did not reenter the country without the express permission of the Attorney General because the Attorney General expressly consented to his reentry when the border patrol agent waived him through the Tijuana checkpoint.

However, unlike the due process claim, this claim was not part of Arzate–Nunez's motion to dismiss or the order denying it.

738

Arzate–Nunez did not raise the consent issue until the sentencing hearing at which he pled guilty. Thus, absent some problem with the guilty plea itself or some exception to the waiver rule, Arzate–Nunez waived this claim by pleading guilty. *Echegoyen,* 799 F.2d at 1276.

The record does not suggest that Arzate–Nunez's waiver of this claim was anything but knowing and voluntary. At the plea taking, Arzate–Nunez's lawyer stated that he felt the consent issue was "a trial issue . . . and ha[d] advised his client that the plea of guilty may result in a loss of that issue on appeal." TR 41 at 13. The lawyer indicated that Arzate–Nunez wished nonetheless to plead guilty in order to obtain the three-point reduction for acceptance of responsibility promised in the agreement. Arzate–Nunez also indicated that he understood that he might waive such a defense and that he nonetheless wished to plead guilty. Arzate–Nunez does not argue that the district court failed to ascertain that his plea was knowing and voluntary or that his plea was not in fact knowing and voluntary.

Rather, he contends that this court may nonetheless address the claim under *United States v. Montilla,* 870 F.2d 549 (9th Cir. 1989), *amended on other grounds,* 907 F.2d 115 (9th Cir.1990). We disagree. In *Montilla,* we emphasized that a defendant who pleads guilty does not thereby waive jurisdictional claims such as claims that the applicable statute is unconstitutional or claims that the indictment fails to state an offense. *Id.* at 552 (citing *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam); *Blackledge v. Perry,* 417 U.S. 21, 30, 94 S.Ct. 2098, 2103–04, 40 L.Ed.2d 628 (1973); *United States v. Broncheau,* 597 F.2d 1260, 1262 n. 1 (9th Cir.), *cert. denied,* 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979)). However, we also found that this exception was limited to cases "in which the judge could determine at the time of accepting the plea, from the face of the indictment or from the record, that the government lacked the power to bring the indictment." *Id.* (citing *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)). We rejected the *Montilla* defendant's claim

because she "could not prove her allegations without an evidentiary hearing or trial testimony." *Id.* at 552–53.

Arzate–Nunez's express consent claim raises factual issues which were not resolved at the time he plead guilty and which we cannot determine from the record below. As the government emphasizes, any consent would not be valid if Arzate–Nunez's use of the passport constituted fraud or if the passport was not in fact authentic. Whether or not Arzate–Nunez even showed the passport to the border agent is a factual issue which has not yet been resolved. Thus, like the *Montilla* defendant, he waived this claim by pleading guilty.

Arzate–Nunez's conviction and sentence are AFFIRMED.