# United States Court of Appeals
## For the First Circuit

No. 11-1971

UNITED STATES OF AMERICA,

Appellee,

v.

JASON P. FIUME,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Souter,* Associate Justice,
and Selya, Circuit Judge.

Neil L. Fishman on brief for appellant.
Margaret D. McGaughey, Assistant United States Attorney, and Thomas E. Delahanty II, United States Attorney, on brief for appellee.

February 22, 2013

---

*Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SELYA**, **Circuit Judge**. The principal issue in this sentencing appeal is one of first impression at the federal appellate level. The appeal is premised on the notion that a two-level enhancement to the defendant's guideline sentencing range (GSR) under USSG §2A6.2(b)(1)(A), when superimposed upon a base offense level dictated by USSG §2A6.2(a), constitutes an impermissible exercise in double counting. Viewed through the mists of distance, this notion possesses a patina of plausibility; on closer examination, however, its weaknesses are apparent. We hold that the use in tandem of a base offense level dictated by §2A6.2(a), and an upward adjustment under §2A6.2(b)(1)(A), does not constitute impermissible double counting. Consequently, we affirm the sentence imposed below.

In June of 2010, defendant-appellant Jason P. Fiume was found guilty in a New York court of assaulting his wife Megan and sentenced to time served. At around the same time, the court entered a protection order, which was to be effective through June 22, 2015. Pertinently, the protection order prohibited the defendant from either approaching or communicating with Megan, and put him on notice that it would be a federal offense to cross state lines in order to violate these conditions.

Unfazed by the protection order, the defendant undertook a course of conduct that flouted its terms. This conduct included attempts to communicate with Megan by telephone, mail, e-mail, text

message, and Facebook. His campaign was not limited to remote communicative efforts; on July 2, 2010, he traveled to his in-laws' home in Maine (where Megan was staying) and left a message for Megan on a tree in the yard.

In due season, a federal grand jury returned an indictment that charged the defendant with violating 18 U.S.C. § 2262(a)(1), (b)(5), a statute that, with some conditions, criminalizes interstate travel with the intent to engage in conduct that transgresses a court-imposed protection order.[1] After the defendant entered a guilty plea to this charge, the probation department prepared a presentence investigation report (PSI Report). The PSI Report recommended that the court start with a base offense level of 18, derived from USSG §2A6.2(a) — a guideline applicable to an array of crimes involving stalking or domestic violence. It further recommended that the court add a two-level enhancement because the offense of conviction involved the violation of a court protection order, see id. §2A6.2(b)(1)(A); another two-level enhancement for a pattern of activity involving stalking, threatening, harassing, or assaulting the same victim, see id. §2A6.2(b)(1)(D); and applied a three-level reduction for acceptance of responsibility, see id. §3E1.1. These calculations,

---

[1] The indictment also contained a stalking count, see 18 U.S.C. §§ 115, 2261(b)(5), 2261A(2)(B), which was later dismissed and is of no moment here.

in concert with the defendant's criminal history category (II), yielded a GSR of 33-41 months in prison.

At the disposition hearing, the district court, over the defendant's objections, accepted the guideline calculations limned in the PSI Report and imposed a top-of-the-range sentence of 41 months. This timely appeal ensued.

In this venue, the defendant renews an objection that he unsuccessfully made below: he argues that the two-level upward adjustment for violation of a court protection order constitutes impermissible double counting because the violation of a court order was also an element of the offense of conviction. Where, as here, we are dealing with a preserved claim of error, we review de novo a sentencing court's interpretation and application of the sentencing guidelines. See United States v. Leahy, 668 F.3d 18, 21 (1st Cir. 2012); United States v. Pho, 433 F.3d 53, 60-61 (1st Cir. 2006).

In the world of criminal sentencing, "double counting is a phenomenon that is less sinister than the name implies." United States v. Zapata, 1 F.3d 46, 47 (1st Cir. 1993). Such arithmetic "is often perfectly proper." Id. After all, sentencing facts are not found "in hermetically sealed packages, neatly wrapped and segregated one from another." United States v. Lilly, 13 F.3d 15, 19 (1st Cir. 1994). Multiple sentencing adjustments may derive from "the same nucleus of operative facts while nonetheless

responding to discrete concerns." Id. Thus, in the absence of an express prohibition, this court routinely has permitted a single underlying fact to be used more than once when that fact bears upon two separate sentencing considerations.[2] See, e.g., United States v. Chiaradio, 684 F.3d 265, 283 (1st Cir. 2012); United States v. McCarty, 475 F.3d 39, 46-47 (1st Cir. 2007); United States v. Wallace, 461 F.3d 15, 36 (1st Cir. 2006); United States v. Rivera-Maldonado, 194 F.3d 224, 235 (1st Cir. 1999); Lilly, 13 F.3d at 17-20; Zapata, 1 F.3d at 49-50.

These principles are dispositive here. Neither the guideline provision about which the defendant complains, USSG §2A6.2, nor its associated commentary contains any textual proscription against the use of a two-level upward adjustment under §2A6.2(b)(1)(A). That is an important datum because "the guidelines themselves are the most helpful aid in the task of separating permissible double counting from its impermissible counterpart." Lilly, 13 F.3d at 19. Courts ordinarily should interpret and apply the guidelines as written, see Zapata, 1 F.3d at 47, and "[t]he Sentencing Commission has not been bashful about

---

[2] We add that the use of the term "double counting" to refer to permissible multiple uses of a single sentencing fact carries with it the misleading suggestion that something unfair or improper has occurred. For that reason, courts and lawyers would be well-advised to use less pejorative language and to speak only of "multiple use" when the guidelines permit a given sentencing fact to be considered at more than one step in determining the total offense level that fits a defendant's conduct.

explicitly banning double counting in a number of instances," Lilly, 13 F.3d at 19; see United States v. Newman, 982 F.3d 665, 673 (1st Cir. 1992) ("[T]he Commission's awareness of the sentencing excesses which flow from impermissible 'double counting' is plainly reflected in other guideline application notes expressly forbidding it." (emphasis in original)).[3] Given the Commission's proclivity for indicating when double counting is forbidden, we are reluctant to infer further such instances out of thin air.

In all events, USSG §2A6.2 offers inhospitable ground for such an inference. The sentencing guideline under which the defendant's base offense level was set targets three separate types of crimes and lumps them within the rubric of "Stalking or Domestic Violence" offenses. Only one of this trio contains as an element the violation of a court protection order. See 18 U.S.C. § 2261 (interstate domestic violence); id. § 2261A (interstate stalking); id. § 2262 (interstate violation of a protection order). The most logical conclusion, therefore, is that the defendant's base offense

---

[3] Examples of explicit prohibitions against double counting abound. See, e.g., USSG §2K2.1, comment. (n.8(A)) (instructing against application of stolen firearm enhancement under certain statutes of conviction "because the base offense level takes into account that the firearm or ammunition was stolen"); id. §3A1.1, comment. (n.2) (instructing against application of vulnerable victim enhancement "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline"); id. §3A1.3, comment. (n.2) (instructing against application of restraint of victim enhancement "where the offense guideline specifically incorporates this factor, or where the unlawful restraint of a victim is an element of the offense itself").

level accounts for the general nature of the offense of conviction as one of stalking or domestic violence, but does not account specifically for the violation of a court protection order; the two-level upward adjustment under USSG §2A6.2(b)(1)(A) bridges the gap and accounts for this feature of the defendant's crime. In other words, the presence of section 2262 within USSG §2A6.2 must be read in light of §2A6.2(b)(1)(A), which makes available, without limitation, an enhancement for a violation of a protection order. This is an endorsement of the enhancement, not a prohibition. That is single counting, not double counting.

The able district judge appreciated this distinction. He specifically noted, at the disposition hearing, that the Sentencing Commission may have rationally intended to punish a stalking-type offense more seriously where it simultaneously involved the violation of a court order. He therefore applied the guidelines as written and enhanced the defendant's offense level accordingly. We discern no error. Cf. Newman, 982 F.3d at 674-75 (explaining that "[t]he carefully calibrated offense level adjustment scheme . . . would be disarranged" if defendant's purported double counting were prohibited, "as the base offense level could not be increased [] in response to" various types of assault).

If more were needed — and we doubt that it is — this result is fortified by the penalty provisions of 18 U.S.C. §§ 2261 and 2261A. These statutes prescribe a special minimum punishment

for cases involving violations of court orders. See id. § 2261(b)(6) ("Whoever commits the crime of stalking in violation of a temporary or permanent civil or criminal injunction, restraining order, no-contact order, or other order described in [18 U.S.C. § 2266] . . . shall be punished by imprisonment for not less than 1 year."); id. § 2261A (incorporating by reference the penalty provisions of § 2261(b)).

The defendant advances yet another argument against the sentence imposed. He claims for the first time on appeal that the purported double-counting scheme subjects him to "punish[ment] twice for the exact same crime" in violation of the Double Jeopardy Clause. We review this new argument only for plain error. United States v. Olano, 507 U.S. 725, 731-32 (1993); United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

The Double Jeopardy Clause, U.S. Const. amend. V, cl. 2, "forbids successive prosecution and cumulative punishment for a greater and lesser included offense," Brown v. Ohio, 432 U.S. 161, 169 (1977), such that a court may not impose multiple punishments for what is essentially the same offense, id. at 165. Here, however, the defendant stands convicted of only a single offense and received only a single sentence. By no stretch of even the most active imagination is the Double Jeopardy Clause implicated.

The defendant makes passing references to a gallimaufry of other theories. He suggests, for example, that his sentence

-8-

comprises cruel and unusual punishment, <u>see</u> U.S. Const. amend. VIII, and violates the rule of lenity.  Because these allusions are ethereal and unaccompanied by any developed argumentation, we deem them waived.  <u>See</u> <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990).

We need go no further.[4]  For the reasons elucidated above, we uphold the defendant's sentence.


**<u>Affirmed</u>**.

---

[4] The government has argued that the challenged enhancement could have been predicated on the violation of any of three other protection orders issued against the defendant (none of which was charged in the indictment).  The district court did not rely upon this reasoning, nor do we.