**UNITED STATES,**

v.

**Hurby Septimus McCALLA a/k/a "Terrance George Beecham" a/k/a "Michael G. Smith" a/k/a "Thomas Harding".**

Crim. A. No. 93–128.

United States District Court, E.D. Pennsylvania.

May 11, 1993.

Anthony G. Bateman, Philadelphia, PA, for defendant.

Eric W. Sitarchuk, U.S. Attys. Office, Philadelphia, PA, for U.S.

### MEMORANDUM

ROBRENO, District Judge.

The defendant stands trial for the crime of being found in the United States following deportation. Presently before the Court is the government's motion to preclude the defendant from offering evidence at trial of the invalidity of his deportation. For the reasons that follow, the Court will grant the government's motion.

## I. BACKGROUND

The lone defendant in the present criminal action was indicted for one count of violating 8 U.S.C. § 1326(b)(2). Section 1326 criminalizes a deportee's voluntary re-entry into the United States.[1] Under the statute, the maximum term of imprisonment for a violation is two years, unless the deportee was convicted of a felony prior to deportation. If the deportee was convicted of a felony prior to deportation, the maximum term of imprisonment for re-entry is five years, and if the conviction was an aggravated felony, the maximum term is fifteen years. 8 U.S.C. § 1326. The indictment in the case *sub judice* alleges that the defendant, an alien, was convicted of an aggravated felony, arrested and deported, and subsequently found in the United States without obtaining consent to reapply for admission.

Trial before a jury commenced on May 5, 1993, on which date counsel made their opening statements and the first two witnesses for the government testified. Before any further testimony was heard, defense counsel informed counsel for the government that they intended to cross-examine upcoming government witnesses on the validity of the underlying deportation of the defendant. The government moved to preclude the defendant from offering evidence of the illegality of the deportation proceedings, arguing

---

1. Section 1326 of Title 8 reads as follows:

§ 1326. Reentry of deported alien; criminal penalties for reentry of certain deported aliens

(a) Subject to subsection (b) of this section, any alien who—

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, or attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—

(1) whose deportation was subsequent to a conviction for commission of a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 5 years, or both; or

(2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 15 years, or both.

8 U.S.C. § 1326 (1992).

that the government need not prove the lawfulness of the underlying deportation as an element of its case under section 1326, and that collateral attacks upon the validity of the deportation proceedings are not permitted as a defense to a section 1326 prosecution. In response, defendant argued that a lawful deportation is an element of the offense proscribed by section 1326, so that if the deportation was illegal, the government cannot prove an element of its case.

As recasted by the arguments of the parties, the issue is whether in a prosecution under 8 U.S.C. § 1326 the defendant may collaterally attack the validity of the underlying deportation based on alleged violations of due process and fundamental fairness. Before proceeding with trial, the Court held a hearing at which both parties had the opportunity to present evidence [2] and argument, and to make written submissions.

## II.  FINDINGS OF FACT [3]

Based on the evidence presented at the hearing, the Court makes the following findings of fact:

1. The defendant is a citizen of the nation of Jamaica, and not a citizen of the United States.

2. In 1979, the defendant entered the United States without lawful inspection.

3. In 1986, the defendant pleaded guilty to one count of third-degree criminal possession of a weapon in state court in The Bronx, New York.

4. In 1987, the defendant pleaded guilty to charges of intimidation of witnesses or victims and simple assault in state court in Philadelphia, Pennsylvania.

5. In 1988, the defendant was convicted of possession of the controlled dangerous substance marijuana with intent to distribute in state court in Camden, New Jersey, though this conviction was later reversed on appeal.[4]

6. On December 17, 1990, Special Agent Peter Podavini of the Immigration and Naturalization Service ("I.N.S.") served an Order to Show Cause and Notice of Hearing upon the defendant to show cause why he should not be deported from the United States.

7. The Order to Show Cause provided the defendant with written notice of, *inter alia,* the right to be represented by counsel at the deportation hearing, at no expense to the government.

8. With the Order to Show Cause, the defendant was served with a list of available free legal services.

9. Also with the Order to Show Cause, the defendant was served with an I.N.S. Form I–618, which provided the defendant with written notice of his right to appeal the decision of the Immigration Judge if he is not satisfied with the decision at the conclusion of the deportation hearing.

10. On January 4, 1991, Immigration Judge Howard Cohen conducted defendant's deportation hearing by telephone, with the defendant appearing pro se and the government represented by an attorney by the last name of Bond.

2. The defendant's only evidence consisted of the tape recording of the defendant's telephonic deportation hearing. A transcript of the tape was made part of the record. The government offered the testimony of Immigration and Naturalization Service Special Agent James Martinelli, who was generally familiar with the procedures employed in the defendant's deportation. The government also offered into evidence several documentary exhibits, including the defendant's deportation Order to Show Cause and Notice of Hearing, an I.N.S. Form I–618 for notice of appeal rights, the decision of the Immigration Judge ordering the defendant's deportation, and the certified convictions of the defendant in New York in 1986 and in Philadelphia in 1987.

3. The Court makes these findings of fact in connection with deciding the government's motion, and no such finding, of course, will supplant the government's burden of proving to the jury beyond a reasonable doubt every element of the offense under § 1326.

4. The Court notes parenthetically that on remand following the reversal, the defendant entered a guilty plea in state court in Camden, New Jersey, to a charge of distribution of a controlled substance. The government will offer evidence at trial of this ultimate guilty plea in order to prove that defendant was convicted of an aggravated felony prior to arrest and deportation, which is one of the elements of the offense under 8 U.S.C. § 1326(b)(2).

11. The Immigration Judge advised the defendant of his right to the assistance of counsel and of the availability of free legal assistance.

12. During the hearing, the defendant expressed the desire to be deported to Jamaica.

13. During the hearing, the defendant admitted that he was a citizen of Jamaica and not the United States, that he had entered the country illegally, and that he had been convicted of drug possession charges in 1988.

14. The Immigration Judge determined that because of his unlawful entry into the country, and also because of his drug conviction, the defendant was subject to deportation.

15. The Immigration Judge determined that there was no legal basis for the defendant to avoid deportation, and he so advised the defendant.

16. The Immigration Judge asked the defendant whether he wished to appeal the Immigration Judge's decision to a higher court, and the defendant replied that he did not wish to appeal.

17. The Immigration Judge entered an order to deport the defendant to Jamaica.

## III. CONCLUSIONS OF LAW AND DISCUSSION

The Courts adopts the following conclusions of law:

1. In a prosecution under 8 U.S.C. § 1326, the government must prove as one element of its case that the defendant was deported. *See* 8 U.S.C. § 1326.

2. The government need *not* prove, as an element of an offense under 8 U.S.C. § 1326, that the defendant's deportation was lawful, and the defendant generally may *not* launch a collateral attack on the validity of the underlying deportation to defend against a section 1326 prosecution. *See United States v. Mendoza–Lopez*, 481 U.S. 828, 834–37, 107 S.Ct. 2148, 2153–54, 95 L.Ed.2d 772 (1987).

3. A defendant charged under section 1326 is entitled to challenge collaterally the fundamental fairness of the deportation proceeding on due process grounds only "where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review." *Mendoza–Lopez*, 481 U.S. at 839, 107 S.Ct. at 2156. Due process requires at least some meaningful judicial review of an administrative proceeding before the administrative decision is used to establish an element of a criminal offense. 481 U.S. at 837–39, 107 S.Ct. at 2155. When the right to direct appeal of the underlying deportation proceedings is provided, a deportee has an opportunity to raise any alleged infirmities in the proceedings, but when there is a deprivation of direct appeal itself, meaningful judicial review of any other alleged defects is effectively precluded.

4. When the defendant challenges the deportation proceedings on due process grounds, the determination of the merits of the defendant's collateral attack is for the judge, rather than the jury.[5] *See Mendoza–Lopez*, 481 U.S. at 838, 107 S.Ct. at 2155 (creating exception to allow for collateral attack of deportation for the purpose of providing "judicial review" when such review was originally precluded); *cf. Walker v. City of Berkeley*, 951 F.2d 182, 184 (9th Cir.1991) ("The court should not have asked the jury to decide the legal question of the adequacy of the post-termination proceedings. Juries do not decide whether or not a procedure satisfies due process.").

5. The defendant's collateral attack on the validity of the underlying deportation constitutes a challenge to one of the elements pleaded in the indictment and should have been raised by way of pretrial motion to dismiss the indictment. *See* Fed.R.Crim.P. 12(b)(2); *see, e.g., Mendoza–Lopez*, 481 U.S. at 831, 107 S.Ct. at 2151 (procedurally, defendants had moved to dismiss their indictments); *United States v. Encarnacion–Galvez*, 964 F.2d 402, 403 (5th Cir.) (collateral attack was decided by district court through

---

5. In this case, the issue was raised by the government's motion to limit the defendant's cross-examination of the government's witnesses, a

preliminary matter which "shall be determined by the court." Fed.R.Evid. 104(a).

hearing on motion to dismiss the indictment), *cert. denied*, — U.S. —, 113 S.Ct. 391, 121 L.Ed.2d 299 (1992).[6]

6. Pursuant to Local Rule of Criminal Procedure 11, "[m]otions required under Fed.R.Crim.P. 12 to be raised prior to trial shall be filed within ten (10) days after arraignment, unless otherwise provided by the Court." Local R.Crim.P. 11.[7]

7. Failure to raise defenses or objections which must be made prior to trial within the time provided by local rule constitutes waiver of such defenses or objections. Fed. R.Crim.P. 12(f).

■ 8. The defendant in the present case has thus waived his right to attack collaterally the validity of his deportation proceeding because the defendant did not raise his due process challenge to the indictment prior to the commencement of trial within the time provided by Federal Rule of Criminal Procedure 12 and Local Rule of Criminal Procedure 11.

■ 9. Assuming, *arguendo*, that the defendant's collateral attack on the validity of his deportation proceeding was not time barred, the defendant bears the burden of proving both a deprivation of the right to direct appeal from the deportation proceeding, and also actual prejudice resulting from a fundamentally unfair aspect of the deporta-

tion proceeding "that would have entitled him to relief on direct appeal." *United States v. Fares*, 978 F.2d 52, 57 (2d Cir.1992); *see also United States v. Proa–Tovar*, 975 F.2d 592, 595 (9th Cir.1992) (en banc).[8]

■ 10. The defendant has failed to meet his burden of showing a deprivation of his right to direct appeal of his deportation proceeding. *See United States v. Zaleta–Sosa*, 854 F.2d 48, 51–52 (5th Cir.1988). Here, the defendant had received written notice of his right to appeal from an adverse decision through the Form I–618 that was served on the defendant prior to the hearing, together with the Order to Show Cause.[9] Additionally, the Immigration Judge during the hearing asked the defendant specifically whether he wished to appeal, and the defendant replied that he did not wish to appeal. Like the defendant in *Zaleta–Sosa*, the defendant indicated a clear preference to be deported to his home country rather than to pursue an appeal. Therefore, the Court concludes that his waiver was knowing, intelligent, and voluntary.[10] The defendant has failed to show that he was deprived of his right to direct appeal of the deportation proceeding, and so he may not now collaterally attack the fundamental fairness of that proceeding as a defense to his section 1326 prosecution. *See Mendoza–Lopez*, 481 U.S. at 834–37, 107 S.Ct. at 2153–54.

6. A decision from the Sixth Circuit is instructive as to the appropriate procedural posture in which to raise this collateral challenge as a defense. *See United States v. Escobar–Garcia*, 893 F.2d 124, 125 & n. 2 (6th Cir.), *cert. denied*, 494 U.S. 1070, 110 S.Ct. 1792, 108 L.Ed.2d 793 (1990). In that case, as in others that have considered the merits of such attacks, the defendant raised the defense by moving to dismiss the indictment. *Id.* at 125. By contrast, the jury never was given the issue to decide; instead, they were instructed through special interrogatories to decide factually whether the deportation element of the offense had been proven without regard to the lawfulness or validity of the underlying proceedings. *See id.* at 125 n. 2.

7. In the present case, consistent with the Local Rule, the Magistrate Judge ordered that such motions be filed within ten days of the arraignment, which was held on April 1, 1993.

8. Although the Court has determined that the defendant bears the burden of proof as to the

merits of the collateral attack, the Court further concludes that even if the government had the burden of proving the fundamental fairness of the deportation proceedings, in this case the government has carried its burden.

9. That the defendant understood what an "appeal" meant is demonstrated by the fact that he previously had successfully appealed his drug possession conviction in New Jersey state court.

10. The Court recognizes that in *United States v. Fares*, 978 F.2d 52 (2d Cir.1992), the Second Circuit determined that where the Immigration Judge (coincidentally the same judge as in this case) had orally asked the respondent whether he wanted to appeal, but had not orally advised him of his right to appeal, the waiver of the right to direct appeal was not knowing and intelligent. *See id.* at 54–57. However, unlike the present case, the respondent in *Fares* had never received written notice of his right to appeal, as was provided to the defendant here by way of Form I–618.

11. Moreover, even if the defendant had shown a deprivation of his right to direct appeal of the deportation proceeding, he still must meet his additional burden of showing actual prejudice resulting from some fundamental unfairness that would have entitled him to relief on appeal. *See Proa–Tovar*, 975 F.2d at 594–95; *United States v. Holland*, 876 F.2d 1533, 1536–37 (11th Cir.1989). Defendant in part contends that his deportation proceeding was fundamentally unfair in that he was not adequately advised of his right to counsel. Defendant's contention that he was not advised of the right to counsel is not evidenced by the record. Rather, the defendant in this case received written notice in advance of the hearing that he had the right to counsel, along with a list of free legal services. Further, at the hearing itself, the Immigration Judge explicitly advised the defendant of his right to the assistance of counsel, and of the availability of free legal services. After so advising the defendant, the Immigration Judge asked the defendant how he wished to proceed, and the defendant responded that he simply wanted to be deported. Defendant has thus failed to demonstrate fundamental unfairness in this respect, as his waiver of the right to counsel was knowing, intelligent, and voluntary.

12. Defendant additionally contends that his deportation was fundamentally unfair because the Immigration Judge did not adequately advise him of the nature of the proceedings against him. During the hearing, however, the Immigration Judge did confirm that the defendant understood that his deportation charges were based upon both his illegal entry into the country and his drug conviction. Defendant had also received prior notice of these grounds for the deportation, as they were described in the Order to Show Cause served upon the defendant.

13. Defendant further contends that his deportation was fundamentally unfair because the Immigration Judge did not adequately advise him of his right to present evidence on his own behalf and to challenge the government's evidence. Although the Immigration Judge did not so advise the defendant during the hearing, the Order to Show Cause provided the defendant with written notice of his rights to present evidence and to examine and challenge the government's evidence. While applicable I.N.S. regulations do require the Immigration Judge to advise the defendant of these rights, 8 C.F.R. § 242.16, nonetheless, failure to comply strictly with the administrative regulations does not necessarily render the proceedings fundamentally unfair. *United States v. Floulis*, 457 F.Supp. 1350, 1353–54 (W.D.Pa.1978). Here, because the defendant had received prior written notice of these rights, the defendant has failed to show the requisite fundamental unfairness.

14. Finally, the defendant has failed to show any prejudice, i.e., a different result, flowing from the alleged defects in his deportation proceedings. Indeed, defendant does not now contest the Immigration Judge's own conclusion that because of his prior convictions, defendant was ineligible for any alternative but deportation. Instead, defendant suggests that had he been represented by counsel, counsel could have challenged his status as an aggravated felon, thus making voluntary departure a possible alternative to deportation if his challenge were to prevail. Defendant's suggestion is mere speculation, insufficient to establish actual prejudice to the defendant. *See Holland*, 876 F.2d at 1537 (concluding that no prejudice resulted where defendant failed to produce "evidence to show that counsel could have made a difference to his status" to make him eligible for suspension of deportation or voluntary departure).[11]

11. Defendant has also argued that because his deportation hearing was conducted by telephone before the Immigration Judge, rather than in person, the proceeding was fundamentally unfair. Although not addressing the due process issue, at least one Ninth Circuit panel has held that deportation hearings by telephone, absent consent of the parties, are not consistent with the plain meaning of the statute setting forth the procedure for deportation. *See Purba v. I.N.S.*, 884 F.2d 516, 517 (9th Cir.1989); *see also* 8 U.S.C. § 1252(b). *But cf. United States v. Valdez*, 917 F.2d 466, 467 (10th Cir.1990) (though defendant objected to the fundamental fairness of his deportation hearing on grounds other than the telephonic nature of the proceeding, court determined that hearing was not fundamentally unfair, and such hearing had, in fact, been conduct-

15. Because the defendant's collateral attack on his deportation proceedings is untimely, and, alternatively, because he has failed to sustain his burden on the merits of such challenge, evidence offered at trial to show the invalidity of the deportation would be irrelevant, and so is inadmissible. Fed. R.Evid. 402. Such evidence would also be highly prejudicial, with a high risk of misleading or confusing the jury. Fed.R.Evid. 403.

## IV. SUMMARY

Defendant wishes to attack collaterally the validity of his underlying deportation on due process grounds, but such a defense to the allegation that he was deported should have been raised as a pretrial motion to dismiss the indictment within ten days of his arraignment. Even assuming, however, that the defendant's collateral attack after the commencement of trial was not untimely and thus waived, the defendant has failed to meet his burden to sustain the challenge. First, the defendant has failed to show that he was deprived of his right to direct appeal of the deportation. Second, the defendant has failed to show that the deportation proceedings were fundamentally unfair resulting in actual prejudice that would have entitled him to relief on direct appeal.

Given that defendant's collateral challenge lacks merit, evidence at trial offered to show the fundamental unfairness of the underlying deportation would be irrelevant, as well as prejudicial. For the foregoing reasons, the government's motion to preclude such evidence will be granted.

cd by telephone). Assuming that the defendant in this case did not consent to holding the hearing by telephone, this is of no moment, since at the hearing the defendant waived his right to judicial review, and in addition he has demonstrated no prejudice resulting from the use of the telephone such that he would have been entitled to relief from deportation on appeal.