**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Oscar ULLYSES–SALAZAR,
Defendant–Appellant.**

No. 93–50144.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 11, 1994.

Decided June 20, 1994.

Derek W. Li, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Ronald L. Cheng, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: WALLACE, Chief Judge, FARRIS and KLEINFELD, Circuit Judges.

Opinion by Chief Judge WALLACE.

WALLACE, Chief Judge:

Ullyses–Salazar challenges his sentence of 70 months' imprisonment following his guilty plea to being present in the United States after a prior deportation, in violation of 8 U.S.C. § 1326(a), (b)(1), and (b)(2). The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal of the sentence under 18 U.S.C. § 3742. We affirm.

## I

Ullyses–Salazar was deported from the United States in 1989 and 1991. He had been convicted in state court of armed robbery in 1983, of unlawfully taking or driving a vehicle in 1988, and of being a felon in possession of a firearm in 1990. In 1992, he was discovered in the United States, and subsequently pleaded guilty to illegal reentry in violation of 8 U.S.C. § 1326(a), (b)(1), and (b)(2).

Concluding Ullyses–Salazar's armed robbery conviction was an "aggravated felony" as defined by the Immigration and Nationality Act (Act), 8 U.S.C. § 1101(a)(43), the district court sentenced him under 8 U.S.C. § 1326(b)(2) which provides for a maximum 15 year sentence. An illegally returning alien that has not previously committed an aggravated felony, in contrast, is only subject to a maximum two year sentence. The Sentencing Guidelines provide for a 16 level enhancement of the offense level for defendants convicted of an aggravated felony. U.S.S.G. § 2L1.2(b)(2). The district court selected a sentence from the lowest end of the range required by the Sentencing Guidelines and

sentenced Ullyses–Salazar to 70 months' imprisonment.

## II

Ullyses–Salazar argued to the district court that it should depart to a sentence of only two years' imprisonment because the Immigration and Naturalization Service (INS) had erroneously told him that he would be subject to no more than two years' imprisonment if he reentered illegally. The district court rejected this argument for departure on legal grounds, stating that the proposed basis for departure was "not valid."

Ullyses–Salazar argues on appeal that the district court could have and should have departed. "We review de novo the district court's ruling that a particular circumstance does not constitute a permissible basis for departure." *United States v. Morales*, 972 F.2d 1007, 1010 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1665, 123 L.Ed.2d 283 (1993).

Upon his deportation in 1991, Ullyses–Salazar was asked to sign INS Form I–294 which stated,

> Should you wish to return to the United States you must write this office or the American Consular Office nearest your residence abroad as to how to obtain permission to return after deportation. By law (Title 8 of United States Code, Section 1326) any deported person who within five years returns without permission is guilty of a felony. If convicted he may be punished by imprisonment of *not more than two years* and/or a fine of not more than $1,000.00.

(Emphasis added.) The statute on which the information in the form was based had been amended in 1988 to provide for imprisonment of up to 15 years for aliens who, like Ullyses–Salazar, had been convicted of aggravated felonies. The INS had not changed Form I–294 to reflect the statutory amendment.

### A.

Ullyses–Salazar first argues that the erroneous information supplied in Form I–294 violates due process guarantees of fair

notice. Criminal laws that are not sufficiently clear are voided by due process because of their vagueness. *See United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954) (criminal statute invalid if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden"). It is true that "[v]ague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." *United States v. Batchelder*, 442 U.S. 114, 123, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). However, we are unaware of any case extending the doctrine past an inquiry into whether the terms of the statute itself are vague. We hold that the doctrine should not be extended to reach the incorrect information contained in a form prepared by the INS. *Accord United States v. Perez–Torres*, 15 F.3d 403, 406 (5th Cir. 1994) (*Perez–Torres*) (rejecting vagueness challenge because "Form I–294 is not a criminal statute"). We have emphasized that in a fair notice inquiry, "[i]t is the statute that must give sufficient notice of the proscribed conduct." *United States v. Larm*, 824 F.2d 780, 784 (9th Cir.1987), *cert. denied*, 484 U.S. 1078, 108 S.Ct. 1057, 98 L.Ed.2d 1019 (1988). The statute at issue here, 8 U.S.C. § 1326(b)(2), gives clear notice of a maximum penalty of 15 years' imprisonment when it states "any alien ... whose deportation was subsequent to a conviction for commission of an aggravated felony ... shall be ... imprisoned not more than 15 years."

Our holding gains support from our recent decision in *United States v. Arzate–Nunez*, 18 F.3d 730 (9th Cir.1994) (*Arzate–Nunez*). In that case, we rejected the defendant's argument that principles of due process prevented his *conviction* under 8 U.S.C. § 1326(b)(2) when he was given a copy of the same erroneous Form I–294 Ullyses–Salazar received. *Id.* at 737. The argument we rejected in *Arzate–Nunez* is not identical to that presented by Ullyses–Salazar, since it challenged a conviction rather than a sentence. However, we follow its holding here because we see no practical distinction between a challenge to a conviction under 8 U.S.C. § 1326(b)(2) and a challenge to the sentence provided by 8 U.S.C. § 1326(b)(2).

## B.

■ Ullyses–Salazar also bases his argument for sentencing departure on the concept of equitable estoppel. He argues that the government should be estopped from seeking a sentence of more than two years based on its representation in Form I–294.

Ullyses–Salazar argues that the due process concept of estopping the government due to entrapment should be imposed because it applies "when an official tells the defendant that certain conduct is legal and the defendant believes the official." *United States v. Tallmadge*, 829 F.2d 767, 773 (9th Cir.1987) (internal quotation and citation omitted). *Tallmadge* held that the defendant, a convicted felon, could not be prosecuted for purchasing a firearm when a federally licensed firearm dealer told him it was legal for him to make the purchase. *Id.* at 774.

The doctrine of estoppel by entrapment is not directly applicable here. Ullyses–Salazar argues that he was "entrapped" because he was not warned of the harshness of the sentence. He does not argue the government misled him. Indeed, INS Form I–294 warned him that his reentry would constitute a felony. We know of no precedent extending this estoppel doctrine to such a situation. *Accord Perez–Torres*, 15 F.3d at 406 (although it misstated the sentence, Form I–294 did not estop the government because it did not mislead defendant about the legality of his conduct). If we were to apply the doctrine when the defendant was in fact told that his conduct was illegal, we would be diverging from the concerns that underlie it. As the Supreme Court has explained, the estoppel doctrine grew out of a concern that due process does not permit a court to "sanction an indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State had clearly told him was available to him." *Raley v. Ohio*, 360 U.S. 423, 426, 79 S.Ct. 1257, 1260, 3 L.Ed.2d 1344 (1959). In this case, the government clearly told Ullyses–Salazar that he was *not* permitted to reenter the United States.

Ullyses–Salazar's estoppel argument also fails if we apply general principles of equitable estoppel to the government, rather than the doctrine of entrapment estoppel. We have applied an equitable estoppel inquiry to governmental conduct in the immigration field. *See, e.g., Santiago v. INS,* 526 F.2d 488, 491 (9th Cir.1975) (en banc), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976). However, "[a] party seeking to estop the government must carry a heavy burden." *United States v. Shampang,* 987 F.2d 1439, 1444 (9th Cir.1993) (*Shampang*). In addition to the traditional elements of equitable estoppel, principle among which is a showing of detrimental reliance, *see Watkins v. United States Army,* 875 F.2d 699, 709 (9th Cir.1989) (en banc) (*Watkins*), *cert. denied,* 498 U.S. 957, 111 S.Ct. 384, 112 L.Ed.2d 395 (1990), Ullyses–Salazar must prove two additional elements in order to estop the government. *Shampang,* 987 F.2d at 1444. First, he must show that the INS engaged in "affirmative conduct going beyond mere negligence" when it failed to revise Form I–294. *Id.* Second, he would have to "prove that not applying estoppel would result in a serious injustice, and that the public will not be unduly burdened by the imposition of estoppel." *Id.*

We first address whether the INS's failure to revise Form I–294 is affirmative misconduct and not just negligence, as required to estop the government. Whether the government's conduct rises to the level of affirmative misconduct depends on the particular facts and circumstances of an individual case. *Watkins,* 875 F.2d at 707. Affirmative misconduct requires an affirmative misrepresentation or affirmative concealment of a material fact. *Id.* It "does not require that the government intend to mislead a party." *Id.* However, in determining whether a misstatement could amount to anything more than negligence, it may be useful to ask whether the government sought to mislead someone. *See Shampang,* 987 F.2d at 1444 (no evidence that government sought affirmatively to mislead); *Mukherjee v. INS,* 793 F.2d 1006, 1009 (9th Cir.1986) (*Mukherjee*) ("Nothing in the present case indicates a deliberate lie."). If in this case the INS was not attempting to mislead, it is less likely that this is the sort of affirmative misconduct needed to estop the government. Rather, the failure to amend the form would more likely be a mere lapse, analogous to when an isolated government agent gives false information. *See, e.g., S & M Investment Co. v. Tahoe Regional Planning Agency,* 911 F.2d 324, 329 (9th Cir.1990), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 963, 112 L.Ed.2d 1050 (1991); *Mukherjee,* 793 F.2d at 1009.

The question before us is whether the INS became aware that the form contained inaccurate information and refused to update it, engaging in conduct that might transcend mere negligence. Ullyses–Salazar had the burden on this issue and failed to fulfill it. The mere passage of time is insufficient. A reasonable argument can be made that the INS had an incentive to deter illegal entries by informing deported aliens of the harsher penalties they would receive if they returned. Thus, though we are troubled that it took more than three years for the INS to update its form, we conclude that Ullyses–Salazar has not proven that its inaction amounts to affirmative misconduct rather than negligence.

Because no affirmative misconduct has been demonstrated, it is unnecessary for us to decide whether it would work a serious injustice to Ullyses–Salazar if we refuse to apply estoppel, *see Mukherjee,* 793 F.2d at 1009 n. 5; *Morgan v. Heckler,* 779 F.2d 544, 546 (9th Cir.1985) (both declining to reach issue of serious injustice after finding no affirmative misconduct), or whether Ullyses–Salazar has proven the other necessary elements to estop the government.

## C.

Even if he does not succeed in his fair notice or equitable estoppel argument, Ullyses–Salazar argues that we should permit a departure from the Sentencing Guidelines based on the unique circumstances of this case.

A court may depart downward if a mitigating circumstance exists that was not adequately taken into consideration by the

Sentencing Commission. 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0, p.s. We agree with the First Circuit that the Sentencing Commission did not take into consideration this Form I–294 situation in formulating the Guidelines. *United States v. Smith*, 14 F.3d 662, 666 (1st Cir.1994) (*Smith*). However, we also agree with the First Circuit that a court nevertheless should not depart under these circumstances. *Id.*

 We have "not permitted departures based on circumstances that neither bear on the offense in question, nor speak to the offender's character." *United States v. Williams*, 978 F.2d 1133, 1136 (9th Cir.1992) (internal quotations and ellipses omitted), *cert. denied*, ── U.S. ──, 113 S.Ct. 1606, 123 L.Ed.2d 168 (1993). Ullyses–Salazar has not shown that he relied on the information in Form I–294. Thus, the only purpose of a departure would be to deter government misconduct. We will not permit a departure based solely on government misconduct, since it would have no relation to the goals of the Sentencing Reform Act. *Id.* Further, we permit departure when the government encourages wrongdoing, only if the government has persuaded or threatened the defendant to break the law. *United States v. Garza–Juarez*, 992 F.2d 896, 912 (9th Cir. 1993), *cert. denied*, ── U.S. ──, 114 S.Ct. 724, 126 L.Ed.2d 688 (1994). In this case, there were no threats or persuasion by the INS, only misinformation.

We agree with the First Circuit that a departure would be contrary to the Guidelines' goal of deterring criminal conduct and promoting respect for the law. *Smith*, 14 F.3d at 666, *citing*, 18 U.S.C. § 3553(a)(2)(A) & (B). The district court was correct in holding it should not depart.

### III

 Ullyses–Salazar next argues that his 1983 armed robbery conviction should not constitute an aggravated felony for the purpose of his sentence. Because he did not raise this objection to his sentence in the district court, we review solely for plain error. *United States v. Koenig*, 952 F.2d 267, 272 (9th Cir.1991). We determine only "whether there was a highly prejudicial error affecting substantial rights." *Id.* The Supreme Court has recently explained that in a plain error inquiry, " '[p]lain' is synonymous with 'clear' or, equivalently, 'obvious.' " *United States v. Olano*, ── U.S. ──, ──, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993).

The Sentencing Guidelines relevant to a conviction under 8 U.S.C. § 1326 include in the definition of an "aggravated felony" any crime of violence for which the term of imprisonment imposed is at least five years. U.S.S.G. § 2L1.2(b)(2), comment. (n. 7). This definition corresponds to the definition of aggravated felony in the Act, under which Ullyses–Salazar was convicted. 8 U.S.C. § 1101(a)(43). Ullyses–Salazar's armed robbery conviction is an aggravated felony under the plain language of both the Guidelines and the Act. He does not dispute this conclusion.

 However, Ullyses–Salazar points out that prior to a 1990 amendment, crimes of violence were not defined as aggravated felonies for the purposes of the Act, 8 U.S.C. § 1101(a)(43). Further, Congress stated that the new definition of aggravated felony would apply only to "offenses committed on or after the date of enactment." Pub.L. No. 101–649, § 501(b), 104 Stat. 4978, 5048 (1990). Ullyses–Salazar argues that since his armed robbery conviction was obtained before 1990, it is an "offense" committed prior to the date of enactment and should not be counted as an aggravated felony. We conclude there can be no clear error in light of our recent decision in *Arzate–Nunez*, 18 F.3d at 735.

In *Arzate–Nunez*, we held that to determine whether a prior conviction is an aggravated felony for the purposes of the illegal reentry statute, 8 U.S.C. § 1326, we may look to the definition of aggravated felony that existed at the time of the illegal reentry rather than that which existed at the time the aggravated felony was committed. *Id.* *Arzate–Nunez* established that for the purpose of ex post facto clause analysis, the relevant "offense" was the subsequent illegal reentry and not the predicate aggravated felony. It is a reasonable extension of this holding, as well as the most obvious reading of the statute itself, that the relevant "offense" for determining when a court should

apply the amended definition of aggravated felony is the "offense" of the illegal reentry itself, instead of the aggravated felony. Thus, there was no clear error.

In addition, Ullyses–Salazar's argument does not constitute the sort of clear and obvious error that we would require in our review for plain error. Regardless of our view of its merit, Ullyses–Salazar's argument is not obvious. Without even arguing that the ex post facto clause justifies his proposed departure, he would go beyond the clear meaning of the Sentencing Guidelines to a superseded definition of "aggravated felony" which appears not in the Sentencing Guidelines themselves, but in a statute which only mirrors the Guidelines' language.

## IV

■ Ullyses–Salazar next argues that district court should not have included two of his prior state convictions in his criminal history score because his guilty pleas to those offenses were constitutionally invalid. He argues that the plea for his 1983 armed robbery conviction was invalid (1) because the summary of facts was not read into the record and therefore the plea lacked a factual basis, and (2) because the court confused him regarding the presumption of innocence when it said that he could call witnesses to prove his innocence. He challenges the 1983 armed robbery conviction as well as the 1988 conviction for unlawfully taking or driving a vehicle because in both plea colloquies (1) the court did not mention in its explanation of the right against self-incrimination, that no negative inferences were to be drawn from a defendant's silence and (2) the court did not inform Ullyses–Salazar of the right to appointed counsel at trial.

The Supreme Court has held that a collateral challenge to a conviction used for sentence enhancement is not constitutionally required, *Custis v. United States,* — U.S. —, —, 114 S.Ct. 1732, 1736–37, 128 L.Ed.2d 517 (1994). We need not decide for purposes of this appeal whether such an attack can be made on some other basis. *See United States v. Vea–Gonzales,* 999 F.2d 1326, 1332 (9th Cir.1993). Even if it were, reversal would not be required.

■ We review de novo whether a plea is voluntary and review for clear error the findings of fact regarding the validity of a plea. *United States v. Butcher,* 926 F.2d 811, 817 (9th Cir.), *cert. denied,* 500 U.S. 959, 111 S.Ct. 2273, 114 L.Ed.2d 724 (1991). Ullyses–Salazar must prove by a preponderance of the evidence that his guilty pleas are constitutionally invalid. *United States v. Newman,* 912 F.2d 1119, 1122 (9th Cir.1990) (*Newman* ).

■ Because the convictions that Ullyses–Salazar challenges were obtained in state court, we do not judge the plea colloquies according to the standards derived from Federal Rule of Criminal Procedure 11 that are applied to pleas in federal court. In reviewing the validity of state court pleas, we inquire only if the plea colloquy satisfies constitutional requirements. *Id.* at 1123; *United States v. Carroll,* 932 F.2d 823, 824–25 (9th Cir.1991). The Constitution requires that the defendant make a voluntary and intelligent choice to waive three constitutional rights: (1) the right to a jury trial; (2) the right to confront one's accusers; and (3) the privilege against self-incrimination. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). A voluntary plea requires " 'real notice of the true nature of the charge.' " *Newman,* 912 F.2d at 1123, *quoting Marshall v. Lonberger,* 459 U.S. 422, 436, 103 S.Ct. 843, 852, 74 L.Ed.2d 646 (1993).

Our review of the record indicates that in both of his guilty pleas Ullyses–Salazar was informed of and voluntarily waived all three of the rights required by *Boykin.* Further, there is no indication that he was unaware of the true nature of the charges against him. The alleged deficiencies in the plea colloquies that Ullyses–Salazar enumerates relate to elements that are simply not constitutionally required. For example, in *Rodriguez v. Ricketts,* 777 F.2d 527, 528 (9th Cir.1985), we explained that there is no requirement that the record of a plea in state court contain a factual basis for the plea. We also explained that there is no requirement that the court give specific advice to the defendant about his right against self-incrimination, as long as

he is aware of the right, as is required by *Boykin.* Because Ullyses–Salazar failed to prove that the state court pleas did not satisfy constitutional requirements, the district court correctly used the convictions in calculating his criminal history score.

AFFIRMED.