

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-17-1994

# USA v. McCalla

Precedential or Non-Precedential:

Docket 93-1908

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"USA v. McCalla" (1994). *1994 Decisions.* Paper 157.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/157

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 93-1908

————————

UNITED STATES OF AMERICA

vs.

HURBY SEPTIMUS MCCALLA
aka TERRANCE GEORGE BEECHAM
aka MICHAEL G. SMITH
a/k/a THOMAS HARDING

Hurby McCalla,
                                    Appellant

————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 93-cr-00128-1)

————————

Argued
August 11, 1994
Before:  MANSMANN, COWEN and McKEE, Circuit Judges.
(Filed October 14, 1994)

————————

Michael R. Stiles
  United States Attorney
Walter S. Batty
  Assistant United States Attorney
Eric W. Sitarchuk, Esquire (ARGUED)
Suite 1250
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA  19106

  COUNSEL FOR APPELLEE

Steven A. Morley, Esquire (ARGUED)
Benjamin Franklin House
Suite 400
834 Chestnut Street
Philadelphia, PA  19107

  COUNSEL FOR APPELLANT

MANSMANN, <u>Circuit</u> <u>Judge</u>.

A jury convicted Hurby Septimus McCalla pursuant to 8 U.S.C. § 1326 for his unauthorized reentry into the United States as an alien who had previously been deported after an aggravated felony conviction. At the time of his deportation, McCalla was given a standard Form I-294 notice which warned that his reentry into the United States without first procuring the permission of the United States Attorney General would expose him to a maximum prison sentence of two years. The two year penalty indicated on the form was a misstatement of the actual statutory maximum penalty of up to 15 years imprisonment. The main issue we address is whether the government should have been precluded under the theory of fair warning, the rule of lenity, or the doctrine of entrapment from seeking a sentence in excess of two years and ultimately, whether the district court erred in sentencing McCalla to a prison term which substantially exceeded the two years described in the notice.

I.

Hurby Septimus McCalla[1] was deported on or about April 9, 1991. At that time, he received and signed Immigration and Naturalization Service Form I-294, which stated:

---

[1]. McCalla has used a variety of aliases. He was convicted in New Jersey Superior Court on May 3, 1988, for possession of a controlled dangerous substance with intent to

> Should you wish to return to the United
> States you must write [the United States
> Department of Justice, Immigration and
> Naturalization Service] or the American
> Consular Office nearest your residence abroad
> as to how to obtain permission to return
> after deportation.  By law (Title 8 of United
> States Code, Section 1326) any deported
> person who within five years returns without
> permission is guilty of a felony.  If
> convicted he <u>may be punished by imprisonment
> of not more than two years</u> and/or a fine of
> not more than $1,000.00.

S.A. 1 (emphasis added).

The INS Form I-294 given McCalla had not been revised to reflect changes in section 1326 of Title 8, U.S.C., which had occurred on November 18, 1988 and November 19, 1990.  The 1988 amendment to section 1326 added a subsection (b), providing for enhanced penalties where the defendant has had prior felony convictions.  A second amendment in 1990 increased the associated maximum fine from $1,000 to $250,000 in accordance with 18 U.S.C. § 3571(b)(3).  Consequently, the portions of section 1326

(..continued)
distribute and distribution of a controlled dangerous substance under the name Michael G. Smith.  As a result of that conviction, McCalla was deported from the United States on April 9, 1991, under the name Terrance George Beecham.  On April 15, 1992, McCalla was arrested in Philadelphia, Pennsylvania, under the name, Thomas Harding.  Apparently, on June 30, 1992, McCalla was again arrested, this time under the name, Dennis Clark, but a fingerprint analysis identified him to be the same person as Thomas Harding.  On January 21, 1993, McCalla admitted that his true name is Hurby Septimus McCalla.  A combination of comparison photographs and fingerprint analyses compiled from local police department records and FBI records established that all of the above names, and other names or spellings, refer to one and the same Hurby Septimus McCalla.

applicable to McCalla at the time of his deportation were as follows:

> (a)  Subject to subsection (b) of this section, any alien who --
>> (1) has been arrested and deported or excluded and deported, and thereafter
>> (2) enters . . . or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States . . . the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
>
> shall be fined under Title 18, or imprisoned not more than 2 years, or both.
>
> (b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection --
>> * * *
>> (2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 15 years, or both.

8 U.S.C. § 1326 (as amended Nov. 18, 1988, Pub. L. 100-690, 102 Stat. 4471; Nov. 29, 1990, Pub. L. 101-649, 104 Stat. 5059).

On or about April 15, 1992,[2] McCalla was found in Philadelphia, having reentered the United States without first

---

[2].     The indictment charged that McCalla was found in Philadelphia, Pennsylvania, on or about April 15, 1992, under circumstances which brought his presence in the United States to the attention of local police authorities.  He was at a night club when a security guard noticed he was carrying a loaded

applying to the Attorney General of the United States for admission and receiving her express consent pursuant to section 1326. He was thus charged with a violation of section 1326(b)(2).

At trial, the court precluded defense counsel from raising to the jury the issue of whether McCalla could be properly charged pursuant to 8 U.S.C. § 1326(b) in light of the errors contained in Form I-294. The jury returned a guilty verdict on the single count indictment. At sentencing, McCalla argued that the government was bound to the misstatements made in Form I-294 in seeking his sentence, and therefore that the government was precluded from seeking a sentence in excess of 2 years despite the 15 year maximum imprisonment provided in section 1326(b)(2). Nonetheless, the court calculated McCalla's offense range at 100 to 125 months pursuant to the United States Sentencing Guidelines, and imposed a sentence of 112 months imprisonment with three years supervised release following completion of his prison sentence and a financial penalty in the amount of $50.00.[3]

(..continued)
pistol and telephoned the police, who subsequently arrested him. The complaint alleged that McCalla was found in the United States on or about January 20, 1993. That date coincides with the date he was placed in the custody of the Immigration and Naturalization Service after completing sentences for local offenses.

[3]. The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. This is an appeal from a final judgment of conviction and order of sentence pursuant to 28 U.S.C. § 1291.

II.

The issue of whether due process mandates that the government be limited to the maximum sentence promulgated by the government's own inaccurate notice of the current law is one of first impression in this circuit.

McCalla argues that due process, fundamental fairness and the rule of lenity militate against imposition of a prison sentence in excess of that which the government has clearly represented it could be. He further argues that the public policy supporting the doctrine of entrapment would preclude the government from receiving a "benefit" from its act of misrepresentation. Thus McCalla seeks to have this case remanded to the district court for resentencing within a two-year sentence limitation.

Our sister courts of appeals have recently rejected the arguments which McCalla raises before us. In United States v. Perez-Torres, 15 F.3d 403 (5th Cir. 1994), a case involving the very same act of misrepresentation on the part of INS, the Court of Appeals for the Fifth Circuit held:

> Form I-294 is not a criminal statute. Hence, the defect [the defendant] complains of lies not in the underlying statute, but rather in a provision of a document with no relevant legal force. As [the defendant] concedes, section 1326 clearly and unambiguously articulated the penalties associated with a reentry offense. Thus, regardless of the inaccuracy of Form I-294, the statute under which [the defendant] was convicted provided notice adequate to satisfy the requirements of due process.

Id. at 406.

Similarly, in reversing the decision of its district court, the Court of Appeals for the Ninth Circuit held in United States v. Sanchez-Montoya, 1994 U.S. App. LEXIS 18,742, *2 (9th Cir. July 26, 1994) that,

> [N]either due process nor principles of equitable estoppel precludes imposing a prison term exceeding two years for illegal reentry on a defendant who had been advised erroneously by the INS before deportation that the maximum penalty for that offense was two years. [citing United States v. Ullyses-Salazar, No. 93-50144, Slip op. 6543, 6549, 6551-52 (9th Cir. June 20, 1994)]. We also conclude[] that such circumstances do not constitute a valid basis for a downward departure. [Citing id. at 6553.]

Accord United States v. Samaniego-Rodriguez, 1994 W.L. 401595 (7th Cir. Aug. 4, 1994) (Form I-294 cannot give rise to a due process violation and section 1326 unquestionably satisfies all due process requirements); United States v. Shaw, 1994 W.L. 244362 (7th Cir. June 7, 1994) (pre-deportation warning that reentry is punishable by a maximum of two years does not render the 46-month sentence imposed a violation of due process).

We agree with our sister courts of appeals. Although the inaccuracy in Form I-294 was regrettable, perhaps inexcusable, due process requires that it is the criminal statute which must clearly set forth the activity which constitutes a crime and the punishment authorized for committing such a crime. See United States v. Batchelder, 442 U.S. 114, 121 (1979) (a statute which ambiguously specifies criminal conduct or the penalties authorized upon conviction raises a constitutional

question).  Section 1326(b)(2) clearly comports with the due process requirement of fair notice.

Similarly, the rule of lenity applies to ambiguous criminal statutes.  Simpson v. United States, 435 U.S. 6, 14-15 (1978) (ambiguities in either the substantive or sentencing provisions of criminal statutes justify application of lenity); United States v. Schneider, 14 F.3d 876, 879 (3d Cir. 1994) (lenity only applies where reasonable doubt persists concerning ambit of statute even after review of statutory text, structure, legislative history and polices).  Section 1326(b)(2) is not ambiguous and we decline to employ the rule of lenity to override the indisputable terms of the criminal statute.

Finally, the defense of entrapment serves to protect against a deception on the part of the government that induces a criminal act by "actually implant[ing] the criminal design in the mind of the defendant."  United States v. Russell, 411 U.S. 423, 436 (1973).  Furthermore, a claim of entrapment requires proof that the defendant lacked predisposition to commit the crime. Id. (entrapment defense requires government inducement and lack of predisposition); see also United States v. Wright, 921 F.2d 42, 44 (3d Cir. 1990), cert. denied, 501 U.S. 1207 (1991). Neither of those elements is shown here.  Form I-294 did not mislead McCalla as to what constituted the specific criminal act; nor do we regard the misstatement as to the punitive sentence relevant to proving McCalla's predisposition.  McCalla willfully reentered the United States despite the government's express

notice that such reentry would constitute a felony.  Public policy militates against equity here.[4]

### III.

McCalla raises other claims which we find meritless. McCalla claims, for example, that the use of his prior aggravated felony conviction to enhance his punishment was in violation of the ex post facto clause.  We hold, however, that because the violation of section 1326(b) occurred subsequent to the effective date of the statutory amendment which provided for an enhanced punishment, there was no ex post facto violation.  The date of McCalla's prior criminal conduct is not relevant for purposes of an ex post facto analysis here.  See Gryger v. Burke, 334 U.S. 728, 732 (1948); United States v. Arzate-Nunez, 18 F.3d 730, 734 (9th Cir. 1994) ("[f]or purposes of analyzing . . . statutes increasing penalties for future crimes based on past crimes, the relevant `offense' is the current crime, not the predicate crime").

McCalla also asserts that evidence of the circumstances under which his reentry came to the attention of authorities and of his subsequent arrest processing was unduly prejudicial and improperly admitted into evidence, and hence that he is entitled

---

[4]. At trial, defense counsel argued that the government should be estopped from proving any elements of section 1326(b)(2) calling for a penalty in excess of two years, the implication being that McCalla detrimentally relied in good faith upon the government's misrepresentation in deciding to risk the commission of a felony.  McCalla precluded a finding of good faith, however, by his willful violation of the criminal law.

to a new trial. McCalla further contends that he was denied the effective assistance of counsel because defense counsel failed to object to the allegedly improper introduction of this evidence. In ruling on the motion in limine, the court held that the evidence was admissible to the extent that it was a foundation for an understanding of the sequence of events which established McCalla's surreptitious and voluntary presence in the United States. Furthermore, in light of McCalla's various aliases, the evidence helped to establish his identity. We hold that it was well within the district court's sound discretion to permit the evidence, and in light of the overwhelming case against McCalla, we do not find any evidence of prejudice or a manifest miscarriage of justice requisite to a finding of ineffective assistance of counsel raised first on direct appeal. Moreover, testimony concerning the basis of McCalla's prior sentence, given on redirect examination in response to questions asked during cross-examination, was invited, and admission of that evidence does not constitute plain error.

Finally, McCalla asserts that the deportation hearing which he was afforded in 1991 did not comport with due process or the statutes and regulations apropos to such hearings. He argues that the alleged deficiency of his deportation hearing precludes using his prior deportation as the basis of the section 1326 charge against him. Specifically, McCalla asserts that the use of a telephonic hearing directly contravened the mandate of 8 U.S.C. § 1252(b), which governs the determination of deportability. McCalla further alleges that the deportation

order was predicated upon a record of conviction which the immigration judge never saw, instead relying solely on McCalla's admission and the representations of the prosecutor that such a record exists and as to its contents.[5]

We acknowledge that a severely deficient deportation proceeding which effectively deprives the defendant of his right of direct appeal may preclude use of that deportation as a predicate to prosecution under section 1326. See, e.g., United States v. Mendoza-Lopez, 481 U.S. 828, 838 (1984) ("where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense"). McCalla has failed to demonstrate, however, that he was effectively deprived of his right of direct appeal and we will not dismiss the section 1326 charge against him.

---

[5]. We note here that in granting the government's motion to preclude evidence of the alleged invalidity of McCalla's deportation, the court held that McCalla had waived his right to collaterally attack the validity of his deportation proceeding because he had not raised any due process challenge to the indictment prior to trial in accordance with the time provisions set forth in Federal Rule of Criminal Procedure 12 and Local Rule of Criminal Procedure 11. See Memorandum Order of the District Court, Criminal Action No. 93-128 (May 11, 1993, at p. 9, S.A. 151). Nevertheless, the court heard the merits of that claim and ruled that McCalla had failed to meet his burden to establish a due process violation. S.A. 151-58.

                                    IV.

          For the foregoing reasons, the judgment of sentence
entered on September 17, 1993, against Hurby Septimus McCalla in
the United States District Court for the Eastern District of
Pennsylvania will be affirmed.


_____




MCKEE, Circuit Judge, dissenting.

          While I agree with the majority in all other
respects, I respectfully dissent from Part II of the majority
opinion.  The majority reasons that, despite the fact that the
government disseminated the inaccurate maximum penalty
information printed on form I-294 to McCalla (and countless other
deportees), McCalla's sentence in excess of two years does not
offend due process because the relevant statute gave notice to
all the world of its contents.          Notice of the conduct
that a statute proscribes and the penalty prescribed for such
conduct are fundamental to due process of law.  See McBoyle v.
United States, 283 U.S. 25, 27 (1931).  The statement on form I-
294, did not give McCalla accurate information and fair warning
regarding "what the law intends to do if a certain line is
passed."  Id.  Accordingly, traditional notions of fairness
inherent in the requirement of due process should preclude us

from allowing McCalla to be sentenced to more than the two years that the government represented to be the maximum sentence.

Although the government was justified in its efforts to incarcerate McCalla based upon his illegal return to this country, our holding today does not properly consider the totality of the circumstances of McCalla's deportation and the context in which he received the "information" in form I-294. The record before us establishes that once it is determined that an individual will be deported, the government makes flight arrangements for the deportee. At the appointed time, the deportee is escorted to the airport in handcuffs by two deportation officers who fingerprint the deportee and are responsible for making sure that the deportee signs the warrant of deportation. Prior to departure the handcuffs are removed, and the warrant of deportation is read to the deportee and then given to him or her along with a copy of form I-294. He or she is then put on the airplane, and the appropriate travel documentation is given to an airline attendant.

In this coercive atmosphere the government clearly intends for the deportee to read and rely upon the information and warnings in each of the documents that are presented to him or her. Indeed, McCalla was given form I-294 so that he would take note of, and heed, the warnings it contained. We now allow the government to successfully assert that the contents of the form are irrelevant to McCalla's notice.

We charge the defendant with knowledge because of the unambiguous statute, yet we do not charge the government agency responsible for enforcing this country's immigration laws with the same notice, and we excuse the error in this form. It stands reality on its head to suggest that the unambiguous statute buried within one particular volume of the United States Code sitting somewhere upon the shelves in far off law libraries somehow reaches out to McCalla in these circumstances and trumps the "information" in form I-294.

I fail to understand the logic or fairness of a position which charges this defendant with knowledge based upon the publication of a statute yet fails to attribute that same knowledge to duly appointed agents of the Attorney General of the United States, or the agency of the government responsible for enforcing immigration laws. All parties seem to agree that the INS did not intentionally mislead McCalla because the INS did not realize that the information contained in form I-294 was wrong when agents handed it to McCalla. Yet, this defendant who is not responsible for enforcing the law, is charged with notice of the change in the law.

Courts have traditionally held that one must know the consequences of an action before one can be held criminally accountable for the action. Thus, due process and fair notice dictate that a defendant cannot be punished when the statute does not clearly define the criminal conduct. McBoyle, 283 U.S. at

In addition, no penalty can be imposed if a statute does not prescribe punishment for certain conduct. United States v. Evans, 333 U.S. 483, 495 (1948). Accordingly, under the circumstances of this case, it is reasonable to limit the government to the sentence that it has represented to be the maximum penalty. I believe fundamental fairness requires nothing less.

The rationale asserted by the government and adopted by the majority elevates the maxim that "ignorance of the law is no excuse" to a mantra which has hindered realistic analysis here. The Supreme Court recently had occasion to limit the use of this "age old maxim" in Ratzlaf v. United States, U.S. ___, 114 S. Ct. 655 (1994). Ratzlaf, though clearly distinguishable, teaches that the existence of a statute cannot serve to give notice of its contents for all purposes even when a defendant engages in conduct known to be improper. Id. at 663. McCalla was aware of the contents of 8 U.S.C. § 1326(b)(2) just as the defendant in Ratzlaf was aware of the contents of the statutes at issue in that case. Both defendants knew that they were engaging in conduct that was improper. The Court in Ratzlaf, however, held that the defendant could not be charged with knowledge that his conduct was a crime. See id. at 658. Just as the defendant in Ratzlaf could not be charged with knowledge of the criminal nature of his activity, the circumstances surrounding McCalla's deportation should preclude charging him with knowledge of 8 U.S.C. § 1326.

Thus, absent controlling precedent to the contrary, I believe that fundamental fairness limits the maximum penalty to which this defendant should be subjected to that amount of incarceration which the government told him he could expect if he were to return illegally.  Therefore, I most respectfully dissent.