

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-19-2007

# USA v. Johnson

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2145

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Johnson" (2007). *2007 Decisions.* Paper 421.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/421

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-2145

———

UNITED STATES OF AMERICA

v.

JECONA JOHNSON,
                                Appellant

———

On Appeal from the United States District Court
for the District of Delaware
(D.C. Crim. No. 04-cr-00057-1)
District Judge: Honorable Joseph J. Farnan, Jr.

———

Submitted Under Third Circuit LAR 34.1(a)
September 17, 2007

Before: SLOVITER, SMITH, and WEIS, Circuit Judges

(Filed: September 19, 2007)

———

OPINION

———

SLOVITER, Circuit Judge.

Appellant Jecona Johnson appeals his conviction for possession of a firearm by a felon. He raises several issues that we discuss herein. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## I.

Jecona Johnson was arrested on July 13, 2004, pursuant to a warrant alleging various drug offenses. During questioning by officers of the Drug Enforcement Administration, he agreed to answer the officers' questions. An officer told him, as a ruse, that he knew Johnson had a handgun and asked where it was located. Johnson eventually informed the officers that he had two handguns at his residence, which they could find in a book bag (backpack) that he said belonged to a friend, Gary Haile, who told him that the two guns were in the bag when he dropped it off at Johnson's house on June 28. After receiving Johnson's permission to search his house, the officers found the backpack which contained, among other things, a .22 caliber gun with ammunition, a loaded .25 caliber gun, and a silencer for the .22 caliber gun.

A superseding indictment charged Johnson with three counts for cocaine base (crack) distribution in violation of 21 U.S.C. § 841(a)(1), one count for conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846, one count for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1), and one count for possession of an unregistered firearm (the silencer) in violation of 26 U.S.C. § 5861(d).

The District Court bifurcated the trial on Johnson's motion to sever the drug

2

charges and the charges for firearm possession. On July 29, 2005, the first jury acquitted Johnson of all drug charges. Following that trial, Johnson moved in limine to exclude certain evidence from the second trial. In response, the Court barred the government from introducing evidence (1) related to parts of the interview on July 13, 2004 that were unrelated to the charges of firearm possession, though it could introduce the redacted report and notes of the investigators; (2) related to Johnson's detention in El Paso, Texas, in March 2004 or the seizure of $23,000 from him; (3) related to the government's investigation of Johnson before July 13, 2004; or (4) about the nature of Johnson' prior felony conviction. The Court denied Johnson's request to exclude testimony about an officer's statement to him during questioning that he knew of his possession of a handgun.

At the second trial, which began on November 21, 2005, the parties stipulated that Johnson had been convicted of a felony in November 1999 and that the silencer found in the backpack was not registered to Johnson. During the opening statements, counsel for the government referred to Johnson's arrest on July 13, 2004, and Johnson moved for a mistrial. The Court denied this motion.

At the trial, the government asked Johnson during cross-examination whether he had ever carried "large sums of cash," and specifically whether he had carried more than $10,000. App. Vol. II at 279. Johnson's counsel objected to this question as precluded by the motion in limine. The Court overruled the objection because the question did not specifically refer to the March 2004 seizure and was relevant to Johnson's motive to have

a gun: specifically, for the protection of such sums. At sidebar, when Johnson's counsel

argued that "when [Johnson] had large sums of cash on him, the evidence shows he didn't

have a gun," the District Court commented, "He's having a bad day that day. He forgot

to bring his gun to protect his cash. He can do a little bit of this, get into it." App. Vol. II

at 282.

Later during the same cross-examination, the government asked Johnson "if

someone had asked you on July 5th, 2004, Hey, can I take that backpack, your response

would have been what?" App. Vol. II at 292. Johnson's counsel objected to this question

as requiring a speculative answer, but the government's counsel explained it as relating to

Johnson's state of mind. The Court overruled the objection. Johnson answered, stating

"No. I would have told them to leave it alone," and he explained his answer: "Because

that's Gary's gun." App. Vol. II at 293.

Before sending the jury to deliberate, the Court instructed the jury that for

constructive possession, "the [g]overnment must prove that Mr. Johnson had the power

and intent to exercise the dominion and control over the firearms he is charged with

possessing." App. Vol. II at 364. It continued:

> Dominion and control are not established by mere proximity to the firearms
> or mere presence in the house where the firearms are located, or mere
> association with the person who does control the firearms. For example, if
> you left something with a friend intending to come back later and pick it up,
> or intending to send someone else to pick it up for you, you would have
> constructive possession of it while it was in the actual possession of your
> friend.

Id.

4

After the jury had been sent to deliberate, it returned with a question seeking a better definition of "the power and intent to exercise dominion and control" and requested "a few more examples." App. Vol. I at 18. Johnson's counsel agreed that it would be appropriate to provide the jury with a definition but initially expressed uncertainty as to whether it was appropriate to provide examples. After discussing the appropriate response with counsel, the Court repeated its original instruction to the jury and then offered the following example:

> I am now in actual possession of my yellow marker. I hold it, so I have dominion and control. . . . Now, if I stand up and I put my yellow marker over here, and then I come back over to my chair . . . and I start to do something else . . . Do I now have constructive possession of that marker? . . . Do you find that there were facts or evidence that would support that I intend to continue to control that marker?

App. Vol. II at 394. The Court provided an additional example:

> [I]f I take my magic marker and I give it to my law clerk, and now my law clerk has actual possession. But, under all the circumstances, could you find I still intend to exercise dominion and control over that, even though it's in his possession? . . . And it depends on what the circumstances were of my laying it there or giving it to him, and what surrounds that . . . .

App. Vol. II at 396.

Following the example, the jury responded that it was more confused. In response, the Court continued:

> In deciding constructive possession, you have to look at the evidence of the placing and all the other evidence around that, and then determine, for instance, whether you thought I was going to go back and get it. . . . Is there evidence that shows that I intended to continue to have dominion, control, exercise my authority over it, even if I give it to another person?

5

App. Vol. II at 397-98.  Following this explanation, the jury responded that it was "okay." App. Vol. II at 398.  The government, but not Johnson's counsel, excepted to the explanation.

The jury later returned a verdict of guilty on the charge of possession of a firearm by a felon and not guilty for the charge of possession of an unregistered firearm.  The Court sentenced Johnson to fifty months in prison to be followed by three years of supervised release.  He filed a timely notice of appeal.

## II.

An appellate court exercises plenary review over the legal standard stated in a jury instruction, but the wording or expression of the instruction is reviewed for abuse of discretion.  United States v. Williams, 344 F.3d 365, 377 (3d Cir. 2003).  However, because Johnson did not object to the jury instructions that were given at his trial, we review the instructions for plain error only.  Fed. R. Crim. P. 52(b); Williams, 344 F.3d at 378-79.

Johnson argues that the examples provided to the jury in the District Court's supplemental instruction were erroneous, confusing, and prejudicial.  He correctly describes these instructions on possession as going to the heart of the case.

The District Court's initial jury instruction was based directly on Third Circuit precedent and was a proper statement of the law about constructive possession.  See United States v. Garth, 188 F.3d 99, 112 (3d Cir. 1999); United States v. Iafelice, 978 F.2d 92, 96 (3d Cir. 1992).  It was also proper for the Court to provide supplemental

6

instructions in response to the jury's question after conferring with counsel. See Gibson v. Mayor & Council of Wilmington, 355 F.3d 215, 231 (3d Cir. 2004). The example used by the District Court, illustrating the concept of constructive possession for the jury using a marker, was essentially the same as the example it described in its initial jury instruction. Both examples conveyed the instruction that constructive possession can be found where an individual did not have actual physical possession of an object but had the intention and ability to gain actual possession of it later. Although the jury expressed its confusion following the Court's examples using the marker, it stated that it had reached an understanding following the Court's further clarification.

The examples given by the Court were not prejudicial or misleading because they merely provided tangible illustrations of the definitions that it had previously given the jury and of the distinction between actual and constructive possession. Johnson's suggestion that the examples given presupposed his actual possession of the illegal materials is unpersuasive.

## III.

Johnson next challenges his cross-examination regarding how he would have responded if someone asked to take Haile's backpack. Johnson's counsel objected at trial on the ground that the question required a speculative answer. We review the decision to overrule this objection for abuse of discretion. Citizens Fin. Group, Inc. v. Citizens Nat'l Bank of Evans City, 383 F.3d 110, 133 (3d Cir. 2004).

We reject Johnson's argument that the government posed an improper hypothetical

7

question.  The government's question was not the type of hypothetical question that a lay witness may not be asked.  See Fed. R. Evid. 705; Wilburn v. Maritrans GP, 139 F.3d 350, 356 (3d Cir. 1998).  Instead, the government explained, and the District Court agreed, that it was asking about Johnson's state of mind, as to which he alone had personal knowledge.

Johnson also argues that the District Court erred in allowing the government's question because its probative value was substantially outweighed by its prejudicial nature in violation of Federal Rule of Evidence 403.  Because no objection to this testimony was made on this basis at the time of trial, we review for plain error.  Fed. R. Crim. P. 52(b); Williams, 344 F.3d at 378-79.  The question related to Johnson's state of mind, which was directly relevant to whether he intended to exercise dominion and control over the contents of Haile's bag, an intent necessary to establish Johnson's guilt.

With respect to the issue of prejudice, although the government's question may have been a "trap," as Johnson argues, in the sense that it sought a damaging answer from him, it was not an unfair question that would require him to incriminate himself.  Even if Johnson's response could have been construed as implying he had control of Haile's bag, such questioning is not comparable to that in Stewart v. United States, 366 U.S. 1 (1961), where a prosecutor's question about a defendant's decision not to testify in previous trials infringed his Fifth Amendment right against self-incrimination.  Id. at 10.  We cannot agree that the District Court's decision to allow the questioning amounted to plain error.

**IV.**

8

Johnson next challenges the trial references to his arrest. He moved for a mistrial because the government's opening statement referred to the fact of Johnson's arrest on July 13, 2004. Johnson argues that the reference to the arrest violated the District Court's in limine ruling. However, that order stated that "[t]he Government shall not introduce evidence relating to the Government's investigation of Defendant prior to July 13, 2004." App. Vol. I at 21. The bare reference to Johnson's arrest, which did not occur "prior to" July 13, without reference to the events and investigation leading to the arrest, did not violate the order.

Johnson also argues that the reference to the arrest, as well as two questions posed to law enforcement personnel regarding the arrest, were irrelevant and unfairly prejudicial. The decision to admit or exclude testimony under Federal Rule of Evidence 403 is subject to review for abuse of discretion and may only be reversed where a court's decision was irrational or arbitrary. Robert S. v. Stetson School, Inc., 256 F.3d 159, 170 (3d Cir. 2001).

Without the foundational fact of Johnson's arrest, the jury may have been left with an incomplete picture of why Johnson was in a position to tell the officers about the guns. This court has previously held that a court acted within its discretion when it admitted evidence of how a crime was discovered for the limited purpose of providing "a foundation for an understanding of the sequence of events." United States v. McCalla, 38 F.3d 675, 680 (3d Cir. 1994). The mention of Johnson's arrest did nothing to give the jury any indication of why Johnson was arrested, so any prejudicial effect was minimal.

9

We conclude that permitting references to the fact of Johnson's arrest was not an abuse of discretion.

## V.

Johnson also argues that the government's cross-examination of him about his past possession of large quantities of money violated the District Court's order prohibiting the government from introducing evidence about the seizure of $23,000 from Johnson in March 2004.  The government's question did not ask about the $23,000 in particular, but rather about Johnson's possession of "large sums of cash" in general.  App. Vol. II at 279.  As such, it did not violate the District Court's order.

The District Court agreed with Johnson that his general possession of large sums of cash could be relevant to establish a motive for his possession of a gun.  Johnson argues that the government was not using its question for this purpose because it never explicitly drew a connection for the jury between possession of large amounts of cash and possession of a gun.  Instead, he contends that the government's purpose was to suggest to the jury that Johnson was involved in drug activity.  However, the government never made any reference to drugs, and the question about money was asked during a line of questioning about whether Johnson feared for his safety, implying that he might want a gun to protect himself and any money he carried.

Reference to the seizure of $23,000 from Johnson was originally barred because of the unfair prejudice that could result from reference to the unrelated El Paso detention, which occurred at the time of the seizure.  In allowing the government's question about

10

the cash, the District Court concluded that mere reference to an instance where Johnson possessed large amounts of money did not carry the same risk of prejudice, absent reference to the El Paso detention. This balancing of the relevance and prejudicial nature of Johnson's testimony was rational. See Robert S., 256 F.3d at 170.

Finally, Johnson contends that the District Court's sidebar comment about Johnson "having a bad day that day" demonstrated the trial court's bias. In reviewing the District Court's comment in context, we see no bias. There is no indication here that the jury overheard the comment or that it could have influenced their conclusions. Furthermore, in the jury instructions the court explicitly stated that "[a]ny . . . comments I made to the lawyers are not evidence," App. Vol. II at 351, and that "[t]his case is for you to decide for yourselves. I absolutely have no opinion about this case." App. Vol. II at 377. We see no abuse of discretion.

## VI.

Finally, Johnson argues that the fact that the jury found him guilty of possession of the guns found in the bag but not guilty of possession of the silencer found in the same bag is illogical and evidence of the jury's confusion. However, as the Supreme Court explained, it is improper for courts to speculate about how a jury reached inconsistent verdicts, for it may be just as likely that the jury made a mistake in favor of the defendant in its verdict of acquittal as it is that it made a mistake in favor of the government in its verdict of guilty. United States v. Powell, 469 U.S. 57, 65-66 (1984). It would be equally improper for us to second-guess the jury by concluding that it was confused after it stated,

11

following the District Court's clarification of its supplemental instructions, that it was not confused. We reject any argument to the contrary.

## VII.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.

_____