**JERMIE MAYNARD, Appellant**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Crim. App. No. 2005-33

District Court of the Virgin Islands

Division of St. Thomas and St. John

February 22, 2008

DEBRA SMITH WATLINGTON, ESQ., St. Thomas, U.S.V.I., *For the Appellant.*

MAUREEN PHELAN, AAG, St. Thomas, U.S.V.I., *For the Appellee.*

GÓMEZ, *Chief Judge of the District Court of the Virgin Islands*; FINCH, *Judge of the District Court of the Virgin Islands*; and DONOHUE, *Judge of the District Court of the Virgin Islands, Division of St. Croix, sitting by designation.*

## MEMORANDUM OPINION

(February 22, 2008)

Appellant Jermie B. Maynard ("Maynard") appeals his kidnapping-for-robbery and second-degree robbery convictions. Maynard raises three arguments on appeal:

1. Maynard challenges the sufficiency of the evidence to support his kidnapping-for-robbery conviction.
2. Maynard argues that the trial court erred when it failed to sua sponte instruct the jury of the lesser-included offense of false imprisonment.
3. Maynard challenges the sufficiency of the evidence to support his second-degree robbery conviction.

For the reasons given below, the Court will vacate Maynard's kidnapping-for-robbery conviction and affirm Maynard's second-degree robbery conviction.

## I. FACTS

On July 9, 2004, 19-year-old Felix Rodriguez ("Rodriguez") was walking to his home in the Kirwan Terrace area of St. Thomas, U.S. Virgin Islands, after finishing work at the Pueblo Supermarket in Sub Base. At approximately 11:20 p.m., when Rodriguez had arrived near his home, four men approached him and asked him for one dollar. Before Rodriguez could answer, the men threw him onto the ground, moved him approximately fifty to one hundred feet, leaned him up against a car, and checked his pockets for money. Rodriguez screamed for help. The men

720

punched Rodriguez in the mouth and held him down to stop him from screaming. The men took Rodriguez's $150 paycheck from Pueblo Supermarket and $20 in singles. Rodriguez went to the police station after the incident and gave descriptions of the four men.

On September 9, 2004, police officers asked Rodriguez to view a photo array. Rodriguez identified Maynard in one of the photographs and again at trial as one of the four men who had taken his money.

On December 30, 2004, Maynard was charged with kidnapping-for-robbery, second-degree robbery, first-degree assault and grand larceny. After a two-day trial in January, 2005, a jury found Maynard guilty of kidnapping-for-robbery and second-degree robbery. The jury found Maynard not guilty of first-degree assault. The trial judge declared a mistrial with respect to the grand larceny charge after the jury failed to reach a verdict. Maynard was sentenced to life in prison for his kidnapping-for-robbery conviction and five years of prison for his second-degree robbery conviction.

## II. DISCUSSION

### A. Jurisdiction

The Court has jurisdiction to review criminal judgments and orders of the Superior Court in cases in which the defendant has been convicted, and has not entered a guilty plea. *See* V.I. CODE ANN. tit. 4, § 33 (2006); Revised Organic Act of 1984, 48 U.S.C. § 1613a (2006).

### B. Standard of Review

#### 1. Sufficiency of the Evidence

The standard of review for a sufficiency of the evidence claim is plenary. *United States v. Taftsiou*, 144 F.3d 287, 290 (3d Cir. 1998). In determining the sufficiency of the evidence for a conviction, the Court looks at the evidence in the light most favorable to the government. The jury verdict is sustained "if any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Wolfe*, 245 F.3d 257, 261 (3d Cir. 2001) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). An appellant that attempts to challenge the sufficiency of the evidence bears a heavy burden. *United States v. Gonzalez*, 918 F.2d 1129,

1132 (3d Cir. 1990) (citing *United States v. Losada*, 674 F.2d 167, 173 (2d Cir. 1982)).

## 2. Jury Instructions

This Court reviews the trial court's jury instructions according to the plain error standard where the defendant fails to object to the instruction at trial. FED. R. CRIM. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); (*United States v. Gambone*, 314 F.3d 163, 182 (3d Cir. 2003) ("Inasmuch as they did not object to the instructions at trial, we examine the charge for plain error.")). "For plain error to exist: There must be an error that is plain and that affects substantial rights. . . . A deviation from a legal rule is error. A plain error is one which is clear or obvious. In most cases, an error will affect substantial rights where it is prejudicial: It must have affected the outcome of the District Court proceedings." *United States v. Retos*, 25 F.3d 1220, 1228-29 (3d Cir. 1994) (internal quotations and citations omitted). The burden is on the defendant to show prejudice. *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). As a result, "it is a rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *United States v. Gordon*, 290 F.3d 539, 545 (3d Cir. 2002).

## III. ANALYSIS

### A. Sufficiency of the Evidence as to the Kidnapping-for-Robbery Conviction

■ Maynard first challenges the sufficiency of the evidence with respect to his kidnapping-for-robbery conviction.[1] Maynard asserts three main grounds for finding that the evidence against him was insufficient. First, Maynard contends that "the testimony on the distance which the victim was moved was speculative and pure conjecture." [Appellant's Br.

---

[1] The Government "believe[s] that an argument that the evidence of kidnapping-for-robbery was sufficient could be made in good faith, but would not serve any legitimate goal," [Appellee's Br. at 9-10], and asserts that "in light of all of the circumstances, the [Government has] determined not to oppose the defendant's request to vacate" the conviction. [*Id.* at 8.]

at 14.] Second, Maynard contends that "there was no evidence regarding the duration of the alleged detention [or] if there was any detention it was very brief." [*Id.* at 16.] Third, Maynard contends that any movement of Rodriguez "did not increase the risk of harm over and above that inherent in the crime of robbery." [*Id.* at 21.]

The crime of kidnapping-for-robbery is codified at Title 14, Section 1052(a) of the Virgin Islands Code ("Section 1052(a)"):

> Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains, such individual for ransom, reward or to commit extortion or to exact from any person or entity any money or valuable thing, or any person who kidnaps or carries away any individual to commit robbery, or any person who aids or abets any such act, is guilty of kidnapping for ransom and shall be imprisoned for life.

V.I. CODE ANN. tit. 14, § 1052 (2006). Thus, to sustain its burden, the Government had to prove beyond a reasonable doubt that Maynard (1) kidnapped, enticed, took or carried away Rodriguez for a substantial distance, i.e., a distance that was more than slight or trivial; (2) with the intent to hold or detain him; and (3) at the time of taking or carrying him away, intended to commit robbery. *Gov't of the Virgin Islands v. Baron*, 48 V.I. 88, 95 (Terr. Ct. 2006). Maynard's appeal focuses on the first two elements.

In *Government of Virgin Islands v. Berry*, 604 F.2d 221, 227 (3d Cir. 1979), the Third Circuit formulated a four-part test[2] to determine whether an asportation or detention rises to the level of kidnapping:

> (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

---

[2] The *Berry* Court stated that "whether a defendant has engaged in kidnapping as defined by section 1052 of the Virgin Islands Code must be determined in light of these four considerations." *Berry*, 604 F.2d at 227.

■ "[W]ith respect to a statute containing a mandatory life imprisonment term, the statutory language must be narrowly construed." *Id.* at 228.

In this case, Rodriguez's initial testimony on the matter was as follows:

> Q: What happened on the night of July 9, 2004, Mr. Rodriguez?
>
> A: I was on my way home. The four individuals came accosting me. I wasn't quite sure. And then they asked me if I could give them a dollar. They didn't give me an opportunity to answer. And then they pitched me down near my home.
>
> Q: They pitched you down. What happened after that, after they pitched you down?
>
> A: They took me further down and lean me on a car, while others were checking my pockets and taking my money.

[J.A. 54-55.]

Following this exchange, further testimony clarified that the victim was taken "further down from the house," or a distance of fifty to one hundred feet. There was no other testimony as to the asportation. [J.A. 55-58.]

With respect to the first *Berry* factor, there is no direct evidence as to the duration of Rodriquez's detention or asportation. At trial, Rodriguez testified that he could not estimate in feet the distance that he had been moved, instead analogizing it to a distance in the courtroom. The Government's counsel estimated, and the trial judge agreed, that the distance Rodriguez indicated amounted to fifty to one hundred feet. Defense counsel agreed that the distance in the courtroom was approximately fifty feet, but did not assent to the estimate of fifty to one hundred feet. [J.A. 57-58.] After carrying Rodriguez away, Rodriguez's assailants checked his pockets as they held him down. Rodriguez did not testify about how long the detention after the asportation lasted.

In the events giving rise to the *Berry* case, there were three separate circumstances that might have constituted kidnapping. *Berry*, 604 F.2d at 227-29. The *Berry* Court found that only one of those three circumstances amounted to a confinement, abduction, carrying away, inveigling, enticement, decoying, or concealment. *Id.* at 228. That circumstance involved a brief car ride. The defendants enticed the victim, who was an acquaintance, into a car by promising him a ride to town, but instead took him to a beach. *Id.* at 223. The *Berry* Court rejected the notion that such

a car ride amounted to kidnapping on the ground that it was too brief, and that there was "no indication in the record that the brief ride created any appreciable risk of injury." *Id.* at 228-29.

■ In the matter before this Court, the detention was apparently quite brief, as in *Berry*. In *Berry*, the victim was transported to a beach from a parking lot outside a bar. In this case, Rodriguez was dragged fifty or more feet. When Rodriguez initially described his detention, he said only that "[t]hey took me further down." The robbery ensued. The duration of the detention was therefore trivial.

The second *Berry* factor is whether the kidnapping "occurred at a different time than the other offense." *Gov't of the Virgin Islands v. Ventura*, 775 F.2d 92, 93 (3d Cir. 1985) (citing *Berry*, 604 F.2d 221). In this case, the kidnapping and robbery were nearly simultaneous. The instant after the victim was "[taken] further down," the robbery ensued. After the asportation, the confinement apparently lasted only as long as the robbery. [J.A. 58-59.] Therefore, this factor, too, weighs against finding that a kidnapping occurred.

The third *Berry* factor is whether the asportation was inherent to the crime of robbery. A robbery victim is often confined or moved a short distance during the course of a robbery. *Berry*, 604 F.2d at 228. In this case, the victim was dragged fifty to one hundred feet. It is unclear from the sparse testimony in this case about Rodriguez's asportation whether this distance was simply inherent to the crime of robbery as he was removed from public view. Scenarios can be envisioned in which the dragging of a victim fifty to one hundred feet is not inherent to the crime of robbery. There is, however, insufficient information on the record to indicate that Rodriguez's assailants moved him further than apparently necessary for them to commit the crime of robbery.

The fourth *Berry* factor is whether the victim was subjected to any greater danger by virtue of his being moved. Again, there is insufficient evidence to conclude that Rodriguez was subjected to greater danger by virtue of his being moved. The record does not reflect whether the area to which Rodriguez was taken was less well-lit or more deserted. [J.A. 58.] Nor does the record reflect any particular danger to which Rodriguez was subjected by dint of being moved.

Considering the four-part test set forth in *Berry*, the Court finds that the evidence adduced at trial, viewed in the light most favorable to the Government, is insufficient to sustain Maynard's kidnapping-for-robbery

conviction. Accordingly, Maynard's kidnapping-for-robbery conviction will be vacated.

## B. Whether the Trial Court Erred by not Instructing on Lesser-Included Offenses

Maynard also argues that "[h]ad the jury been given an instruction of false imprisonment, it is reasonably probable that the jury would have convicted appellant of false imprisonment rather than kidnapping for robbery." [Appellant's Br. at 30.] Maynard thus urges that the kidnapping-for-robbery conviction be reversed or vacated because the court failed to *sua sponte* instruct the jury on the lesser-included offense of false imprisonment. Because the kidnapping-for-robbery conviction will be vacated on the ground that there was insufficient evidence to support the conviction, this argument is moot.

 In addition, where, as here, no timely motion is made to instruct the jury on a lesser-included offense, the record is reviewed for plain error. *United States v. Beros*, 833 F.2d 455, 458 n.3 (3d Cir. 1978), *called into question on other grounds, Schad v. Arizona*, 501 U.S. 624, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991). "Under the plain error standard, an appellate court may correct an error not raised at trial if it finds (1) an error (2) that is plain, (3) that affects substantial rights, and (4) if, in its discretion, 'the error seriously affects the fairness, integrity, or public reputation of [the] judicial proceedings.'" *United States v. Gaddy*, 174 Fed. Appx. 123, 125 (3d Cir. 2006) (quoting *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005)). The Supreme Court has admonished courts to characterize a mistake as plain error "sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result," and should reverse only "particularly egregious errors." *United States v. Frady*, 456 U.S. 152, 163 n.14, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). Here, Maynard does not assert that the jury instruction at trial affected his substantial rights. Moreover, Maynard does not assert, nor does the record reflect, that the jury instruction in this case affected the "fairness, integrity, or public reputation" of the trial.

## C. Sufficiency of the Evidence as to the Second-Degree Robbery Conviction

Maynard's final argument on appeal is that there was insufficient evidence to convict him of second-degree robbery. Maynard asserts three

grounds for challenging the sufficiency of the evidence. First, Maynard contends that Rodriguez's identifications of Maynard are insufficient.[3] Second, Maynard contends that there was insufficient evidence to show that he forcibly stole property because the jury acquitted him of the first-degree assault charge and deadlocked with respect to the grand larceny charge. Third, Maynard contends that there was no evidence that Rodriguez sustained any injuries or that there were other individuals involved.

The crime of second-degree robbery is codified at title 14, section 1863 of the Virgin Islands Code:

> A person is guilty of robbery in the second degree when he forcibly steals property and when:
>
> (1) He is aided by another person actually present; or
> (2) In the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime causes physical injury to any person who is not a participant in the crime.

V.I. CODE ANN. tit. 14, § 1863 (2006). Thus, to sustain its burden, the Government had to prove beyond a reasonable doubt that Maynard took Rodriguez's property against his will, and either that Maynard was aided by another person at the scene or that Rodriguez sustained physical injury.

■■ With respect to the sufficiency of the identifications, the record reflects that Rodriguez told the police on the night of the incident that the individuals who had taken his money were male, black, brown-eyed and under 18 years old. [J.A. 105.] Rodriguez also gave descriptions of the men's builds, heights, hair, and accents. [*Id.* at 105-06.] The record also shows that after giving this description, Rodriguez "stressed this one description, a short, fat one with braids." [J.A. 96.] This description immediately prompted one of the officers to say, "Who, Wormy? And [Rodriguez] said yes, yes, him." [*Id.* at 97.] At trial, the same officer

---

[3] Maynard specifically argues that although Rodriguez "said he knew the four individuals . . . he was not able to describe them one by one." [Appellant's Br. at 31.] Maynard further argues that "the only identification of the appellant came two months after the incident when Mr. Rodriguez was shown a photo array of five pictures" and that "[t]here was no other eye witness testimony or any other evidence to connect the appellant to the alleged crime." [*Id.* at 32.]

testified that he knew Maynard as Wormy, and that at the time of the robbery Wormy had braids. [*Id.* at 101.] On September 9, 2004, when shown a photo array, Rodriguez identified the photograph of one of the four men who had taken his money. [*Id.* at 66.] At trial, Rodriguez identified Maynard as the person whom he had identified in the photograph. [*Id.* at 72-73.] Rodriguez further testified that Maynard "was one of the ones searching my pockets. And took my money." [*Id.* at 78.] Based on the foregoing, the Court finds that Rodriguez's identifications of Maynard are sufficient to sustain Maynard's second-degree robbery conviction. *See United States v. Dorsey,* 462 F.2d 361, 362 (3d Cir. 1972) (finding that the testimony of a single witness alone is sufficient to sustain an armed robbery conviction).

■ Maynard's second argument is equally without merit. In *United States v Powell,* 469 U.S. 57, 66-67, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984), the Supreme Court rejected a defendant's argument that she was entitled to a reversal of her conviction where her acquittal on one count was inconsistent with another count on which she was convicted. The Supreme Court reasoned that inconsistent verdicts are often "a product of jury lenity." *Id.* at 65. Consequently, as the Third Circuit has noted, "the [Powell] Court held that the inconsistency between the acquittal and the conviction did not require a reversal of the conviction." *United States v. Gross,* 961 F.2d 1097, 1107 (3d Cir. 1992); *see also United States v. Johnson,* 247 Fed. Appx. 357, 363 (3d Cir. 2007) (noting that "it is improper for courts to speculate about how a jury reached inconsistent verdicts"). Any inconsistency between Maynard's conviction of second-degree robbery and acquittal of first-degree assault is not grounds for an acquittal of the second-degree robbery conviction.

■ Finally, to sustain a second-degree robbery conviction, the Government needed to prove that Maynard took Rodriguez's property, and either that Maynard was aided by another person or that Rodriguez suffered an injury. The record does not reflect that Rodriguez suffered an injury.[4] However, the record establishes that Maynard forcibly took Rodriguez's property. [J.A. 61-62.] The record also establishes that Maynard was aided by other persons actually present during the robbery. [J.A. 77.]

---

[4] While Rodriguez sustained only a minor injury, the record establishes that Maynard forcibly took his property.

Considering all of the evidence in a light most favorable to the Government, the Court finds that there is sufficient evidence to sustain Maynard's second-degree robbery conviction.

## IV. CONCLUSION

For the reasons stated above, there is insufficient evidence to sustain Maynard's kidnapping-for-robbery conviction. Accordingly, Maynard's kidnapping-for-robbery conviction will be vacated. Sufficient evidence exists for a reasonable jury to convict Maynard of second-degree robbery. Accordingly, Maynard's second-degree robbery conviction will be affirmed. An appropriate judgment follows.